# PETITION FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

Name    __BYRD_____    __LESLIE_____ E-filing __A._____
              (Last)                            (First)              (Initial)

Prison Number    __D-30420_____

Institutional Address    __480 Alta Rd., San Diego, CA 92179__

**FILED**

DEC 1 7 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

__LESLIE ARTHUR BYRD_____
Full Name of Petitioner

vs.

__ROBERT J. HERNANEZ, Warden, RJDCF et al.__
Name of Respondent
(Warden or jailor)

# CV 07    6375

Case No.
(To be supplied by the Clerk,
U.S. District Court)

**SBA**    **(PR)**

PETITION FOR WRIT OF HABEAS CORPUS

## Read Comments Carefully Before Filling In

### When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma.

If you file in the Northern District because you are now in a prison in this District but you were not convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court in which is located the State court which convicted and sentenced you. The Federal District Courts in California prefer that a petition should be considered in the district of conviction and sentencing. The records can be more easily consulted and witnesses are available if a hearing is necessary.

If you were convicted and sentenced and are not now in a prison in the Northern District, do not file in this District. If you do, your petition will be denied for lack of jurisdiction of the subject matter and you will have to refile in the district of sentencing.

## Who To Name As Respondent

You must name the person in whose actual custody you are. This usually means the warden or jailor. Do not name the State of California, a city, a county, or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the State judgment against which you seek relief but may be subject to such custody in the future (e.g. detainers), you must name the person in whose custody you are now and the attorney general of the State in which the judgment which you seek to attack was entered.

**PART A**                     JURISDICTION

The federal district court can only consider your petition if you satisfy certain jurisdictional requirements. The information below will allow the court to determine whether those requirements are met.

1. For what crime were you sentenced? (If you seek habeas corpus based upon a sentence for more than one crime, list each crime sparately, using Penal Code numbers if known. If you are seeking habeas corpus as to more than one sentence, a different petition should be filed for each sentence.

Second Degree Murder  P.C. 187

(Note: Petitioner is appealing his Board of Prison Terms 2006 Hearing)

2. The sentence from which you seek relief is as follows:

(a) Name and location of court which imposed sentence (for example, Alameda County Superior Court, Oakland):

| Marin County Superior Court | Marin County, California |
|---|---|
| Court | Location |

(b) Case number, if known ___9635___

(c) Date and terms of sentence ___1986 – 15 Years to Life___

(d) Are you now in custody serving this term? Yes /X7  No /__/

(Custody means being in jail, on parole or probation. You are not in custody if you are released on bail, on your own recognizance or if there is a stay of execution of sentence.)

Where? ___R. J. Donovan Correctional Facility___   ___480 Alta Rd. San Diego, CA 92179___
      (Name of Institution)              (Address)

3. What post-conviction relief have you sought?

APPEAL

(a)  Did you take an appeal from your conviction?   Yes /_x_/   No /__/

(b)  To what court(s)?     Check

Court of Appeal          Yes /_x_/   No /__/   <u>1986</u>        <u>Denied</u>
                                               (Give year)   (Result)

Supreme Court of
California               Yes /_x_/   No /__/   <u>Year Unknown</u>    <u>Denied</u>
                                               (Give year)   (Result)

Any other court          <u>Federal District Court   and 9th Circuit Court</u>
                              (Give name and year:  Result)

(c)  If you appealed, were the grounds the same as those which will be set
forth in this petition?   Yes /__/   No /_x_/

(d)  Was any opinion rendered?   Yes /_x_/   No /__/

(e)  If you did not appeal, what were your reasons? N/A

_____

_____

_____

(f)  Did you seek permission to file a late appeal under Rule 31(a)?

Yes /__/   No /_x_/

If you answered "Yes" give _____
                                        (Name of Court)

_____
                              (and result)

OTHER POST-CONVICTION REVIEW

(g)  Other than appeals, have you previously filed any petitions, appli-
cations or motions with respect to t is conviction in any court,
state or federal?   Yes /_x_/   No /__/

(h)  If you answered "Yes" give the following information about each
proceeding.  (Use back side of this page if you need more space.
Fill in the same questions for each.)

1.  Name of Court  <u>Marin County Superior Court</u>

Type of Proceeding  <u>Writ of Habeas Corpus</u>

Grounds raised (Be brief and specific):

a. The Board's Decision was arbitrary and capricious, thus denying due process.

b. The Board's continual denial of parole based on unchanging factors converts

c. petitioner's sentence to life without possibility of parole, denying due process.

d. _____

e. _____

Result _____Denied_____    Date of Result _March 19, 2007_

Citation of opinion, if any and known __None given.__

II. Name of Court _California Court of Appeal_

Grounds raised (Be brief and specific):

a. (Same as above)

b. _____

c. _____

d. _____

e. _____

Result _____Denied_____    Date of Result _May 30, 2007_

Citation of opinion, if any and known __None given.__

III. Name of Court _California Supreme Court_

Grounds raised (Be brief and specific):

a. (Same as above)

b. _____

c. _____

d. _____

e. _____

Result _____Denied_____    Date of Result _November 28, 2007_

Citation of opinion, if any and known __None given.__

(i)  If you answered "No" explain briefly why you have not sought any post-conviction review?

N/A

_____

_____

(j)  Is any petition or other post-conviction preceeding now pending in any court?   Yes /‾7    No /‾X̲7

_____
(Name and location of Court)

PART B - TRIAL INFORMATION
_____

4.  Check if any of the following were held in your case?

Arraignment:  Yes /‾X̲7 No /‾7   Preliminary Hearing:  Yes /‾x̲7 No /‾7

Motion to Suppress:  Yes /‾7 No /‾X̲7

5.  Check whether a finding of guilty was made after a plea of

     Guilty  /‾7      Not Guilty  /‾X̲7     Nolo Contendere  /‾7

     Any other plea _____
                                        (Specify)

6.  Check kind of trial:

     Jury  /‾X̲7       Judge alone  /‾7

     Judge alone on a transcript  /‾7

7.  Did you testify at your trial?   Yes /‾x̲7  No /‾7

PART C - GROUNDS FOR RELIEF FROM CONVICTION
_____

State briefly and concisely every ground which you believe supports your claim that you are being held in unlawful confinement.  This means telling the court the facts upon which you rely.  You should avoid legal arguments with numerous case citations.  Thus, what legal right or privilege were you deprived of in your case?  What happened to deprive you of this right? Who made the error of which you complain?  What did he do wrong?  When did he do it?  If you lack space to state all your grounds, use the back side of the page.

NOTE WELL:  You should state all possible grounds for relief from the conviction described in Part A in this petition.  If you fail to set forth your grounds now, you may bar yourself from presenting such grounds at a later date, or the respondent may assert successfully that a second petition from you is an abuse of the federal habeas corpus remedy.

8.  **Grounds for Relief**   (Note: Petitioner is seeking relief from his 2006 Board
of Prison Terms Hearing)

(a)   **Ground One:** The Board's decision was arbitrary and capricious because it was

unsupported by any evidence, inapposite to the record and lacked a rational nexus between
the factors cited and petitioner's current parole risk, thus denying due process.

   Supporting Facts: _____

(Please see attached petition)

_____

_____

_____

(b)   **Ground Two:** The Board's continual denial of parole based on unchanging factors
illegally converts petitioner's sentence of Life With the Possibility of Parole to Life
Without the Possibility of Parole, thus denying petitioner's right to due process.

   Supporting Facts: _____

(Please see attached petition)

_____

_____

_____

(c)   **Ground Three:** _____

_____

   Supporting Facts: _____

_____

_____

_____

9.  If any of the grounds listed were not previously presented to any other
court, state briefly which grounds were not so presented and why:

   **N/A**

_____

_____

_____

10. Supporting cases, if any. List by name and citation only, the cases which you think are close factually to yours so that it is an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

_____

(Please see attached petition)

_____

_____

_____

_____

PART D - ATTORNEY INFORMATION _____

11. Give the name and address of each attorney who represented you in the proceedings attached here.

(a)  Arraignment Jerrold M. Ladar, Suite 310, 507 Polk St., San Francisco, CA

(b)  At preliminary hearing __Same as above_____

(c)  At time of plea _____Same as above_____

(d)  At trial _____Same as above_____

(e)  At sentencing _____Same as above_____

(f)  On appeal _____Same as above_____

(g)  Other post-conviction proceeding ___same as above_____


12. Was the attorney hired by you or your family?  Yes /_x_7  No /__7

    Appointed by the Court?  Yes /__7  No /_x_7

    Are you alleging as one ground for relief that your attorney gave you ineffective legal assistance? If so, whom and at what stage?
                N/A

13. If you did not have an attorney represent you, did you represent yourself?  Yes /__7  No /__7    N/A

    With consent of Court:    Yes /__7  No /__7

14. Are you represented by an attorney in this petition? Yes /__7 No /_X_7

If you answered "Yes" give name and address of your attorney:

N/A

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner

relief to which he may be entitled in this proceeding.

Executed at <u>San Diego, California</u>    Dated: <u>12/12/09</u>

_____

Signature of Petitioner

## FORMA PAUPERIS AFFIDAVIT
### (See Instructions of this form)

I hereby apply for leave to proceed with this habeas corpus petition
without prepayment of fees or costs or security therefor. In support
of my application, I state that the following facts are true:

(1)  I am the petitioner in said petition, and I believe I am entitled
to redress.

(2)  I am unable to pay the costs of said action or give security because:

_____

_____

_____

_____

Signature of Petitioner
(Sign here only if you seek to
proceed without payment of fees)

STATE OF _____)

COUNTY OF _____)

I declare under penalty of perjury that the foregoing is true and correct.

Signed on _____
                (Date)

_____

Signature of Petitioner

1
2
3
4
5
6

**UNITED STATES DISTRICT COURT**

7

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

8
9
10

LESLIE ARTHUR BYRD            )
Petitioner, Pro Se            )        Case No. _____

11
                              )
              v.              )
                              )
12
ROBERT J. HERNANDEZ           )
Warden, RJDCF, et. al.        )
13
                              )        **PETITION FOR WRIT OF HABEAS CORPUS**
              Respondents     )        **(Under 28 U.S.C. §2254)**
14
──────────────────────────────)

15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| Table of Authorities | ii |
| Table of Exhibits | iv |
| INTRODUCTION | 1 |
|    I.   The Parties | 3 |
|   II.   Exhaustion of Administrative and state remedies | 3 |
|  III.   Statement of Jurisdiction | 3 |
|   IV.   Requirements of Due Process; Standard of Review | 4 |
| PETITIONER'S CONSTITUTIONAL CLAIMS | |
| Ground #1:  The Board's decision is arbitrary and capricious because it is unsupported by any evidence, inapposite to the record, and lacks any rational nexus between the factors cited and petitioner's current parole risk, thus violating petitioner's state and federal constitutional right to due process. | 5 |
| Ground #2:  The Board's continual denial of petitioner's parole, based on unchanging factors and contrary to substantial evidence demonstrating change for the better, illegally converts petitioner's term of life with the possibility of parole to life without the possibility of parole, thus violating petitioner's due process rights under both the state and federal constitutions. | 17 |
| Prayer For Relief | 26 |
| Verification | 27 |
| Declaration of Service By Mail | 28 |

1

## TABLE OF AUTHORITIES

2    **California Constitution:**

3        Article I, Section 7, Subdivision (a)

4    **United States Constitution:**

5        Fourteenth Amendment

6    **State Administrative Regulations:**

7        California Code of Regulations, Title 15, Division 2

8        California Penal Code §§§1473(a), 3041(a), 3041(b)

9    **State Case Law:**

10        In re Dannenberg (2005) 34 Cal.4th 1061

11        In re Elkins (2006) 144 Cal.App.4th 475

12        In re Lee (2006) 143 Cal.App.4th 1400

13        In re Ramirez (2001) 94 Cal.App.4th 549

14        In re Rosenkrantz (2002) 29 Cal.4th 616

15        In re Scott (2004) 119 Cal.App.4th 871

16        In re Scott (2005) 133 Cal.App.4th 573

17        In re Smith (2003) 109 Cal.App.4th 489

18        In re Smith (2003) 114 Cal.App.4th 343

19        In re Criscione (2007) Santa Clara County Case #71614 (Judicial
20                             Notice only)

21        Terhune v. Superior Court (1986) 65 Cal.App.4th 864

22    **Federal Case Law:**

23        Biggs v. Terhune (9th Cir., 2003) 334 F.3d 1510

24        Diaz v. Norton (    ) 376 F.Supp. 112

25        Dunn v. U.S. Parole Commission (10th Cir., 1987) 818 F.2d 742

26        Edwards v. Balisok (1987) 520 U.S. 641

27        Environmental Defense Ctr., Inc., v. EPA (9th Cir., 2003) 344 F.3d 832

28        Ellard v. Alabama Bd. of Pardonds & Paroles (11th Cir., 1987 824 F.2d 937

**TABLE OF AUTHORITIES (Cont'd)**

Evans v. Carey (E.D. Cal. 2006) WL 1867543

Greenholtz v. Nebraska Penal Inmates (1979) 442 U.S. 1

Hewitt v. Helms (1983) 459 U.S. 460

Hicks v. Oklahoma (1980) 447 U.S. 343

Irons v. Warden of Cal. St. Prison-Solano (E.D. Cal. 2005) 358
                                          F.Supp.2d 936

Lupo v. Norton (    ) 371 F.Supp. 156

McQuillion v. Duncan (9th Cir., 2002) 306 F.3d 895

Montoya v. U.S. Parole Commission (10th Cir., 1990) 908 F.2d. 635

Morrisey v. Brewer (1972) 408 U.S. 471

Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F.Supp.2d 1063

Sass v. Cal. Board of Prison Terms (9th Cir., 2006)_F.3d__2006
                                    WL 2506293

Superintendent v. Hill (1985) 472 U.S. 445

United States v. Nixon (1974) 418 U.S. 683

Vargas v. U.S. Parole Commission (9th Cir., 1988) 865 F.2d 191

Vitek v. Jones (1980) 445 U.S. 480

Wolff v. McDonnell (1974) 418 U.S. 539

**TABLE OF EXHIBITS**

Page(s)

EXHIBIT # 1:   2006 Life Prisoner Evaluation Report                          1-8

EXHIBIT # 2:   2006 Subsequent Parole Consideration Hearing                  1-101

EXHIBIT # 3:   2005 Life Prisoner Hearing Decision Face Sheet                1

EXHIBIT # 4:   2002 California Board of Prison Terms Decision                1-7

EXHIBIT # 5:   1996 California Board of Prison Terms Decision                1-4

EXHIBIT # 6:   1993 Life Prisoner Hearing Extraordinary Action
               and Decision                                                 1-2

EXHIBIT # 7:   2006 Psychological Assessment                                 1-6

EXHIBIT # 8:   2001 Psychological Assessment                                 1-7

EXHIBIT # 9:   Category "T" Final Report                                     1-5

EXHIBIT #10:   Letters of Support                                            1-8

EXHIBIT #11:   Laudatory / Self-Help / Work Chronos                          1-14

EXHIBIT #12:   Matrix of Base Terms For Second Degree Murder                 1

EXHIBIT #13:   Multiple Sclerosis Verification                               1-2

EXHIBIT #14:   Board of Prison Terms Statistics                              1-6

EXHIBIT #15:   Marin County Superior Court Denial                            1

EXHIBIT #16    California Court of Appeal Denial                             1

EXHIBIT #17    California Supreme Court Denial                               1

EXHIBIT #18    In re Criscione                                               1-34

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LESLIE ARTHUR BYRD            )
Petitioner, Pro Se            )        Case No. _____
                              )
            v.                )
                              )
ROBERT J. HERNANDEZ           )
Warden, RJDCF, et. al.        )        **PETITION FOR WRIT OF HABEAS CORPUS**
                              )        **(Under 28 U.S.C. §2254)**
            Respondents       )
_____)

### INTRODUCTION

Petitioner, Leslie Arthur Byrd, hereby submits the foregoing **Petition For Writ of Habeas Corpus**, alleging that the Board of Prison Hearings (hereinafter the "Board") has violated his constitutional right to Due Process as guaranteed by the Fourteenth Amendment of the United States Constitution.

In 1986, petitioner was convicted in Marin County superior Court of murder (second degree) and was sentenced to fifteen years to life (Case #9635). (For a summary of the offense, see Exhibit #1, p.1).

Under a 15-to-life sentence, the term is not to be set by the trial court, but is to be determined by the California Board of Prison Hearings. The primary statutes and regulations governing the Board's suitability hearings are Penal Codes §§3041(a) and 3041(b), as well as the California Code of Regulations, Title 15, Division 2 (see in re Rosenkrantz (2002) 128 Cal.Rptr.2d pp.137-138).

Petitioner attended his initial parole hearing in 1993 and requested a postponement so that he could complete a Category "T" (therapy) program (see Exhibit #6, pp.1,2).  During subsequent parole hearings in 1996 and 2002, petitioner was denied parole for 5 and 3 years, respectively.  In 2005, petitioner stipulated to a 1 year denial so that he could obtain an updated psychological assessment (see Exhibit #3, p.1), and in 2006 petitioner was denied parole for 3 years.  In the foregoing writ, petitioner challenges the Board's decision at his 2006 hearing, alleging:

1)  The Board's decision was arbitrary and capricious because it was unsupported by any evidence, inapposite to the record, and lacked any rational nexus between the factors cited and the petitioner's current parole risk;

2)  The Board's continual denial of petitioner's parole, based on unchanging factors and contrary to substantial evidence demonstrating change for the better, illegally converts petitioner's term of Life With The Possibility of Parole to Life Without The Possibility of Parole.

Based on these grounds petitioner believes the Board has violated his liberty interest in parole and his due process rights  as guaranteed by the Fourteenth Amendment of the United states Constitution.

I.  **THE PARTIES**

LESLIE ARTHUR BYRD is the petitioner, represented Pro Se, and is currently incarcerated at the Richard J. Donovan Correctional Facility in San Diego, California.

ROBERT J. HERNANDEZ is the warden of the Richard J. Donovan Correctional Facility and currently has legal custody of the petitioner.

JAMES DAVIS is the Chairperson of the Board of Prison Hearings which is the legal agency responsible for administering petitioner's sentence.

2

## II.  EXHAUSTION OF ADMINISTRATIVE AND STATE REMEDIES

Effective May 1, 2004, the Board repealed its regulation requiring life-term inmates to file an administrative appeal when challenging Board decisions.  Hence, there are no administrative remedies for petitioner to exhaust.

Petition filed a writ in the state courts, raising the same issues as the instant petition, on March 13, 2007.  These claims were denied by the California Supreme Court on ___11/28/07___  (see Exhibits #15, #16 and #17). Hence, all state remedies have been properly exhausted.

## III.  STATEMENT OF JURISDICTION.

The United states District Court for the Northern District of California has jurisdiction under 28 U.S.C. §2254(a), which states:

> "The Supreme Court, a justice thereof, a circuit judge,
> or a district court shall entertain an application for
> a writ of habeas corpus on behalf of a person in state
> custody pursuant to the judgement of the state court only
> on the grounds that he is in custody in violation of the
> constitution or laws or treaties of the United States."

Petitioner asserts that he is custody in violation of the Constitution of the United States.

The United states District Court for the Northern District of California also has legal jurisdiction under 28 U.S.C. §2254(a) because petitioner has exhausted remedies available in the courts of the state; and also under §2254(d) because the adjudication of petitioner's claims in state court as "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."

## IV.  REQUIREMENTS OF DUE PROCESS; STANDARD OF REVIEW

1)  The Board must follow its own rules and regulations governing parole suitability hearings Vargas v. U.S. Parole Commission (9th Cir., 1988) 865 F.2d 191, pp. 193-194.

3

2)  State parole statutes and regulations bestow in inmates a liberty interest in parole protected by due process Mcquillion v. Duncan (9th Cir., 2002) 306 F.3d 895 pp.901-903; In re Rosenkrantz (2002) 128 Cal.Rptr.2d 114.

3)  Petitioner's liberty interest required him to be found suitable for parole because, after his minimum eligible parole date had lapsed, he had been evaluated to no longer pose an unreasonable risk of danger to public safety (Penal Code §3041(a); CCR, Title 15, §§2401, 2402(a)).  United States Supreme Court law holds that states must follow their own penal statutes Hicks v. Oklahoma (1980) 447 U.S. 343.

4)  The Board's decision cannot be arbitrary and capricious and must show a rational nexus between factors cited and stated conclusions In re Sturm (1974) 11 Ca.3d 258; Montoya v. U.S. Parole Commission (10th Cir., 1990) 908 F.2d 635; Dunn v. U.S. Parole Commission (10th Cir., 1987) 818 F.2d 742, 745.

5)  The California Supreme Court holds that the Board may only deny parole to life-term inmates as long as they meet the specified factors on the Board's regulations (e.g., CCR, Title 15, §2402(c) and there is "some evidence" to support the Board's findings In re Rosenkrantz (2002) 128 Cal.Rptr.2d 114, pp.137, 141.  However, U.S. Supreme Court law holds that the "some evidence" standard is an additional requirement of due process, not the only requirement Edwards v. Balistock (1997) 520 U.S. 641, 117 S.Ct. 1584, 1588.

6)  Repeated or continual denial of parole, based on unchanging or static factors, and contrary to substantial evidence demonstrating change for the better, violated a protected liberty interest because it converts the sentence of life-term inmates from "Life With The Possibility of Parole" to "Life Without The Possibility of Parole" Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910.

**GROUND #1:** **THE BOARD'S DECISION IS ARBITRARY AND CAPRICIOUS BECAUSE IT IS UNSUPPORTED BY ANY EVIDENCE, INAPPOSITE TO THE RECORD, AND LACKS ANY RATIONAL NEXUS BETWEEN THE FACTORS CITED AND PETITIONER'S CURRENT PAROLE RISK, THUS VIOLATING PETITIONER'S STATE AND FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS.**

California's parole scheme gives rise to a cognizable liberty interest that is entitled to protection under both state and federal Constitutions In re Rosenkrantz (2002) 29 Cal.4th 616, 621; McQuillion v. Duncan (9th Cir., 2002) 306 F.3d 895, 903; Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910, 914, 915; Sass v. Cal. Bd. of Prison Terms (2006) ___ F.3d ___ 2006  WL 2506393.

Under California state law, one year prior to petitioner's minimum eligible parole release date, petitioner is entitled to appear before the Board to be considered for parole (Penal Codes §§3041(a) and 3041(b). Accordingly, as specified by statute, the Board "shall normally set a parole release date" unless "it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offenses, is such that consideration of the public safety requires a more lengthy period of incarceration..." In re Ramirez (2001) 94 Cal.App4th 549; 114 Cal.Rptr.2d 381, 393.

The Board has established regulations for determining whether an inmate is suitable or unsuitable for release on parole which are published in the California Code of Regulations, Title 15, Division 2 (hereinafter "CCR").  The relevant sections of the CCR, as applied by the Board at the petitioner's parole hearing, are §§2400-2411.  CCR §2402(a) states, "The panel shall first determine whether a prisoner is suitable for release on parole.  Regardless of the length of time served, a life prisoner shall be found unsuitable if in the judgement of panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  Hence, as specified by statute and regulation, the Board

1   shall set a release date unless the inmate <u>currently</u> poses <u>an unreasonable</u>

2   <u>risk of danger to society</u> (see <u>In re Smith</u> (2003) 114 Cal.App.4th 343,370

3   holding "[A] determination of unsuitability is simply shorthand for a

4   finding that a prisoner currently would pose an unreasonable risk of

5   danger if released at this time.").

6       In making its determination, the Board "must be cognizant not only of

7   the factors required by state statute...but also concepts embodied in the

8   Constitution requiring Due Process." <u>Greenholtz v. Nebraska Penal</u>

9   <u>Inmates</u> (1979) 442 U.S. 1, pp.7-8.  Furthermore, according to the California

10  Supreme Court, parole decisions "must reflect an individualized

11  consideration of the specified criteria and cannot be arbitrary and

12  capricious." <u>In re Rosenkrantz</u> (2002) 29 Cal.4th 616, 677; see also

13  <u>In re Dannenberg</u> (2005) 34 Cal.4th 1061, 1071, holding Board decisions

14  not based on evidence or relevant factors may deny prisoner their Due

15  Process rights.  Our U.S. Supreme Court demands no less, holding "Prisoners

16  are entitled to be free from arbitrary actions of prison officials that

17  affect their constitutionally protected interests." <u>Wolff v. Mc Donnell</u>

18  (1974) 418 U.S. 539, 558; <u>Vitek v. Jones</u> (1980) 445 U.S. 480, pp.488-489.

19  As summarized in <u>Ramirez</u>,

20          "Judicial oversight must be extensive enough to protect
            the limited right of parole applicants to be free from
21          an arbitrary parole decision...and to something more than
            mere pro forma considerations. (citation) The courts may
22          properly determine whether the Board's handling of parole
            applicants is consistent with parole policies established
23          by the Legislature. (citation)  While courts must give
            great weight to the Board's interpretation of the parole
24          statutes and regulations, final responsibility for inter-
            preting the law rests with the courts. (citation)  Courts
25          must not second-guess the Board's evidentiary findings.
            (citation)  However, it is the proper function of judicial
26          review to ensure the Board has honored in a 'practical
            sense' the applicants right to 'due consideration'."
27          (citation) <u>In re Ramirez</u> (2001) 94 Cal.App.4th 549, 564.

28

**A.  There is not "some evidence" to support the Board's
      decison that the petitioner currently poses an
      unreasonable risk of danger to society.**

According to state and federal law, parole decisions must be supported

by some evidence and that evidence must have an "indicia of reliability"

In re Rosenkrantz (Id.); Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910, 915.

More specifically, "suitability determinations must have some rational

basis in fact."  In re Elkins (2006)___Cal.Rptr.3d___ 2006 WL 3072139.

It is important that the some evidence standard be properly understood.

First, the some evidence standard is an additional requirement of due

process, not the only requirement Edwards v. Balisok (1997) 520 U.S. 614,

648.  Second, the courts are not to look only at whether some evidence

supports the Board's application of any given criteria, but whether the

Board's decision contains some evidence that an inmate currently poses

an unreasonable risk of danger to society In re Lee (2006)___Cal.Rptr.3d

___2006 WL 2947968, p.4; In re Elkins (2006)___Cal.Rptr.3d___ WL 3072139, p.12.

As stated in Rosenkrantz, "the governing statute provides the Board

must grant parole unless it determines that public safety requires a

lengthier period of incarceration for the individual because of the

gravity of the offense  underlying the conviction.  (citation)  And as

set forth in the governing regulations, the Board must set a parole date

for a prisoner unless it finds, in the exercise of its judgement, after

considering the circumstances enumerated in section 2402 [or 2281] of

the regulations, that the prisoner is unsuitable for parole."  In re

Rosenkrantz (2002) 128 Cal.Rptr. 114, 138.  Hence, as required by our

state supreme court, the Board must set a parole date unless a prisoner

is found unsuitable for parole as specified by statute or regulation.

In making the section 3041(b) suitability determination, the Board

must consider "[a]ll relevant, reliable information"  (CCR §2402(b)),

1    including the nature of the commitment offense and behavior before, during

2    and after the crime; the petitioner's social history; mental state;

3    criminal record; attitude toward the crime; and parole plans (CCR §2402(b)).

4    The circumstances tending to show unsuitability for parole include that

5    the inmate 1) committed the offense in a particularly heinous, atrocious

6    or cruel manner; 2) possesses a previous record of violence; 3) has an

7    unstable social history; 4) has previously sexually assaulted another

8    individual in a sadistic manner; 5) has a lengthy history of severe

9    mental problems related to the offense; and 6) has engaged in serious

10   misconduct while in prison (CCR §2402(c) (1)(2)(3)(4)(5) & (6)).

11       At petitioner's 2006 hearing, the Board denied petitioner a parole

12   release date essentially based upon the nature of the crime, stating:

13   "We come to this conclusion first and foremost from the commitment offense

14   itself" (Exhibit #2, p.93). While the Board went on to criticize petitioner's

15   psychological evaluation as "inconclusive" and petitioner's parole plans

16   as lacking "significant specificity and/or documentation" (Exhibit #2, p.98)

17   these reasons cited by the Board do not constitute "some evidence" that

18   petitioner currently poses an unreasonable risk of danger to society.

19   The offense is so old (i.e. over 21 years at the time of the hearing)

20   that it lacks the "indicia of reliability" to indicate that petitioner

21   still poses a current, credible danger (see, for example, In re Elkins

22   Id. at p.12, holding "the predictive value of commitment offense may be

23   very questionable after a long period of time. (Citation)"). Additionally,

24   petitioner suffers from multiple sclerosis, an incurable, progressive

25   debilitating neurological disease which now requires petitioner to use

26   a wheelchair and further diminishes any potential danger to society

27   (Exhibit #13, pp.1,2) In re Lee (2006) 43 Cal.App.4th.

28       Petitioner denies that the psychological assessment prepared for

1    Board in 2006 was "inconclusive."  The report, completed by Doctor

2    Luisa Fijman, Staff Psychiatrist, includes a clear assessment of

3    petitioner's danger to society, if paroled, stating:

4            "Mr. Byrd's violence potential outside a controlled setting
             in the past was considered to have been less than average
5            and at present, it is estimated to be reduced from that level.
             If released to the community, he would in all probability
6            be likely to continue improvement given his defined set of
             expectations and goals, along with family support.  He
7            further appears to have internal resources necessary,
             along with the motivation to be productive and contribute
8            to helping others." (Exhibit #7, p.6)

9    A psychological assessment completed in 2001 by Doctor Gary Pesavento,

10   Staff Psychologist, concludes:

11           "In closing, Mr. Byrd should be removed from the special
             calendar because psychopathology is not related to future
12           criminal behavior.  Psychological opinion would not
             contribute to a release decision." (Exhibit #8, p.7)

13   The Category "T" Final Report, completed in 1996 by Doctor J. M. Henry,

14   Senior Psychologist, after a 14 month intensive therapy program

15   conducted by a panel of psychiatrists and psychologists, stated: "Mr.

16   Byrd's violence potential outside a controlled setting is considered

17   quite low." (Exhibit #9, p.2)

18           "He has frequently discussed his remorse on a formal basis
             and an informal basis in a number of settings.  He is
19           consistent with his feelings and emotions.  In discussing
             remorse for this report, he had to pause a number of times
20           to regain his composure.  In this writer's opinion, Mr. Byrd's
             remorse is appropriate, pervasive and genuine." (Exhibit #9, p.4)
21
22   The Category "T" Report concludes:

23           "No further individual or group therapy is seen as necessary
             to prepare Mr. Byrd to return to the community."..."It is
24           highly likely that this inmate represents a minimal risk to
             society if released." (Exhibit #9, p.4)

25

26

27

28

                                    9

1    With regard to the Board's assertion that petitioner's parole plans

2  lacked "significant specificity and/or documentation," petitioner discussed

3  this issue at length with the Board during the hearing (Exhibit

4  The petitioner sought input from the Board regarding the nature of the

5  "specificity" they required and documentation requested was trivial in

6  light of the discussion. Petitioner notes that, included among his

7  letters of support, is a letter promising financial support for the

8  petitioner upon his release (Exhibit #10, p.1)    Petitioner also notes

9  that, due to his progressive physical disability, any parole plans are

10  and must remain somewhat fluid, depending on the level of petitioner's

11  disability at the time of his parole.

12    As the above facts and arguments indicate, the Board's decision is

13  arbitrary and capricious and violates due process, as guaranteed by both

14  state and federal Constitutions, because there is no evidence that the

15  petitioner currently poses and unreasonable risk of danger to society

16  In re Rosenkrantz (Id.); McQuillion v. Duncan (Id.); Biggs v. Terhune (Id.).

17    **B.  The Board's decision is inapposite to the record.**

18    The Board's decision is arbitrary and capricious and abrogates due

19  process because it is inapposite to the record that was before them.

20  Factors tending to show suitability for parole are:

21    1) No Juvenile Record.  The prisoner does not have a record of

22  assaulting others as a juvenile or committing crimes with a potential of

23  personal harm to victims;

24    2) Stable Social History.  The prisoner has experienced reasonably

25  stable relationships with others;

26    3) Signs of Remorse.  The prisoner performed acts which tend to

27  indicate the presence of remorse, such as attempting to repair the damage,

28  seeking help for or relieving suffering of the victim, or indicating he

understands the nature and magnitude of the offense;

4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time;

5) Battered Woman Syndrome.  At the time of the commission of the crime, prisoner suffered from Battered Woman Syndrome, as defined in Section 2006(b), and it appears the criminal behavior was the result of that victimization;

6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime;

7) Age.  The prisoner's present age reduces the probability of recidivism;

8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release;

9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release (Cal. Code of Regs., Title 15, §2402).

Petitioner believes that, absent Battered Woman Syndrome, he meets the criteria for all of the other factors tending to show suitability for parole.  1) Petitioner has no juvenile record;  2)  Petitioner has been married to the same woman since 1967, was gainfully employed throughout the marriage and has broad support  from family and friends; 3) The petitioner has repeatedly expressed remorse for his actions and has indicated that he understands the nature and magnitude of the offense (Exhibit #7, p.5) (Exhibit #8, pp.5,6) (Exhibit #9, p.3).  Petitioner alleges that significant stress contributed to his behavior.  In addition to the increasing stress brought on by his advancing disease, petitioner was

11

1    undergoing significant stress at work.  Petitioner was employed as the

2    Loan Supervisor for a bank in Northern California which had approximately

3    45 branches, and was responsible for supervising approximately $700,000,000

4    in loans.  The fear that his advancement in the banking industry would be

5    curtailed, or even ended, should his medical condition be discovered by

6    the bank was the source of increasing stress as his condition slowly

7    deteriorated; 5) Battered Woman Syndrome is not applicable; 6) Lack of

8    Criminal History.  Petitioner has no prior criminal history, whatsoever;

9    7) Age.  Petitioner is 61 years old; 8) Understanding and Plans For the

10   Future.  As previously stated, petitioner has broad family and financial

11   support.  Additionally, petitioner is a college graduate and has in the

12   past demonstrated the ability to earn a living; 9) Institutional Behavior.

13   Petitioner has demonstrated exemplary institutional behavior, as

14   acknowledged by the Board during the hearing (Exhibit #2, p.94), and

15   has participated extensively in self-help groups and has devoted many

16   hours to assisting other inmates (Exhibit #11, pp.2-10).  In addition,

17   petitioner has received laudatory chronos from custody staff (Exhibit

18   and one chrono making a direct recommendation for parole from a Correctional

19   Captain (Exhibit #11, p.1).

20       The Board's decision violates due process because it does not conform

21   with the Board's own regulations (see, for example, Vargas v. U.S. Parole

22   Commission (9th Cir., 1988) 865 F.2d, pp.193-194, holding parole boards

23   are bound to follow their own regulations and...these regulations have

24   the force of law; and Ellard v. Alabama Board of Pardons and Paroles

25   (11th Cir., 1987) 824 F.2d pp. 937,943, holding "[T]he Due Process

26   clause...prohibits the states from negating by their actions rights

27   which they have conferred by their words.")

28       In Rosenkrantz, the state supreme court states, "It is irrelevant

                                    12

1    that a court might determine that evidence in the record tending to

2    establish suitability for parole far outweighs evidence demonstrating

3    unsuitability for parole." In re Rosenkrantz, supra, 128 Cal.Rptr.114, 156.

4    Petitioner disagrees. As stated in Greenholtz, "[t]he behavior of an

5    inmate during confinement is critical in the sense that it reflects the

6    degree to which the inmate is prepared to adjust to parole release."

7    Greenholtz v. Nebraska Penal Inmates (1979) 442 U.S. 1, 15.  More

8    importantly, the ultimate question to be determined by the Board is

9    whether or not a prisoner currently poses an unreasonable risk of danger

10   to society.  A reformed prisoner can in no way be regarded as a danger

11   or threat to the public, and if a prisoner is not a current danger then

12   parole must be granted (Penal Codes 3041(a) and 3041(b)).

13       Finally, the Board's decision is also inapposite to the record

14   because it ignores the "Matrix of Base Terms for Second Degree Murder"

15   as provided in CCR 2402(b) (Exhibit #12, p.1). Given the circumstances, the

16   petitioner's committment offense falls under categories "C-III" on the

17   Matrix (Severe Trauma with No Prior Relationship), which gives a

18   suggested term of 19-20-21 years. At the time of the hearing, however,

19   petitioner had been incarcerated for over 21 years.  True, the gravity

20   of the offense can serve as the sole reason for denying parole, especially

21   if the offense is particularly egregious (Ramirez, Id.), but even a

22   particularly egregious offense has its limits.  Consider, for example,

23   the case of Rosenkrantz.  The egregiousness of Rosenkrantz's crime as

24   a second degree murder justified denying his parole, but as the state

25   supreme court cautioned, once Rosenkrantz reaches the point where he is

26   serving time for first degree murder denying his parole would be

27   questionable, even under the deferential "some evidence" standard

28   In re Rosenkrantz, supra, 128 Cal.Rptr. at pp. 166-167.  In fact, the

13

state supreme court explicitly stated:

> "The Board's authority to make an exception [to the setting
> of a parole date] should not operate so as to swallow the rule
> that parole is normally to be granted.  Otherwise, the Board's
> case-by-case rulings would destroy the proportionality
> contemplated by Penal Code 3041, subdivision (a), and also by
> the murder statutes, which provide distinct terms of life
> without possibility of parole, 25 years to life, and 15 years
> to life for various degrees and kinds of murder." (Id. at p.161)

Petitioner has now surpassed the maximum expected term for second degree

murder and is, essentially, being considered as having a first degree murder.

Furthermore, after long periods of time, the egregiousness of the offense

loses its weight and, at some point, may even be illogical to use as

justification for denying parole.  As cited in federal law:

> "It is simply irrational for [the] seriousness of the offense
> to be used first to determine the appropriate guideline period
> and then to be used again as the stated reason for confining
> a prisoner beyond that guideline period." Lupo v. Norton, 371
> F.Supp 156, 163.  (See also Diaz v. Norton, 376 F.Supp 112 at
> 115 stating, relying on the seriousness of the offense "beyond
> the appropriate guideline...would not be appropriate because
> the guideline table (matrix) already assesses the seriousness
> of the offense."

Hence, as the above factors and arguments demonstrate, the Board's

decision is arbitrary and capricious and violates due process because it

is inapposite to the record that was before them during the hearing.

   C.  **The Board's decision lacks a rational nexus between the
       factors cited and the petitioner's current parole risk.**

   As stated at the outset of this Ground, "suitability determinations

must have some rational basis in fact." In re Elkins (2006) ___ Cal.Rptr.3d

___ 2006 WL 3072139, p.7.  Accordingly, parole decision must be more than

a "mouthing on conclusionary words" and have a "reliable factual

underpinning" In re Scott (2004) 119 Cal. App.4th 871 (See also In re

Smith (2003) 114 Cal.App.343, 371, holding Board decisions are arbitrary

when "no chain of reasoning" exists between "[the] immutable factor of

drug use and current parole risk in view of a long period of abstinence.")

14

1   Federal law concurs.  In Dunn, for example, the Tenth Circuit struck down

2   a decision by the U.S. Parole Commission on the grounds that it was

3   arbitrary for the commission to rely on an 18-year-old insanity plea to

4   deny parole, particularly when current mental health evaluation stated

5   the prisoner had no current mental illness Dunn v. U.S. Parole Commission

6   (10 Cir., 1987) 818 F.2d 635 742, 745 (see also Montoya v. U.S. Parole

7   Commission (10th Cir., 1990) 908 F.2d 635, pp. 639-640.

8       A rational nexus may exist, for instance, if a prisoner committed

9   an offense while he was in a gang and current evidence in the record

10  shows that he is still an active gang member or engaging in gang activities;

11  or if a prisoner committed an offense while addicted to drugs and current

12  evidence in the record shows that his addiction is not in remission or

13  he recently used drugs.  But in the present case before the court, there

14  is no evidence that such a nexus exists.  On the contrary, the reasons

15  cited by the Board that the petitioner currently poses an unreasonable

16  risk of danger to society defy logic.   As previously stated, the Board

17  came to its decision "first and foremost from the commitment offense

18  itself." (Exhibit #2, p.93)   The record shows that the petitioner has

19  been a model inmate for over 20 years, meets every single applicable

20  criteria for suitability, and has been forensically evaluated multiple

21  times over a long period of time as having a less than average risk of

22  violent behavior if released to the community.   The Board's reasons for

23  denying petitioner's parole, in fact, clearly meet the definition of

24  "arbitrary" as defined by the Ninth Circuit Court of Appeals, when it stated:

25          An agency has acted in an arbitrary and capricious manner if
            "the agency has relied on factors that Congress has not
26          intended it to consider, entirely failed to consider an
            important aspect of the problem, offered an explanation for
27          its decision that runs contrary to the evidence before the
            agency, or is so implausible that it could not be ascribed
28          to a difference in view or the product of the agency expertise."
            Environmental Defense Ctr., Inc v. EPA (9th Cir., 2003) 344 F.3d
            832, 858.

                                    15

1    More importantly, according to regulation, parole is to be denied only

2    if petitioner currently poses an <u>unreasonable</u> risk of danger to society

3    (CCR §2402(a)).  Petitioner submits that after more than 20 years in

4    prison, and having surpassed the maximum suggested terms for the worst

5    classification of second degree murder; who has programmed in an

6    exemplary manner while incarcerated; who has been forensically evaluated

7    multiple times as posing a minimal risk to the public if released; and

8    who is experiencing deteriorating health due to an incurable and

9    progressive disease, should not be deemed as posing an <u>unreasonable</u> risk

10   of danger to society.  Hence, as the above facts and arguments indicate,

11   the Board's decision is arbitrary and capricious and violates due process

12   because there is no rational nexus between the reasons cited for denying

13   parole and petitioner's current parole risk.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**GROUND #2:** <u>THE BOARD'S CONTINUAL DENIAL OF PETITIONER'S PAROLE, BASED ON UNCHANGING FACTORS AND CONTRARY TO SUBSTANTIAL EVIDENCE DEMONSTRATING CHANGE FOR THE BETTER, ILLEGALLY CONVERTS PETITIONER'S TERM OF LIFE WITH THE POSSIBILITY OF PAROLE TO LIFE WITHOUT THE POSSIBILITY OF PAROLE, THUS VIOLATING PETITIONER'S DUE PROCESS RIGHTS UNDER BOTH STATE AND FEDERAL CONSTITUTIONS.</u>

As previously stated, California life-term inmates have a liberty interest entitled to protection under the Due Process clause of the state and U.S. Constitutions <u>In re Rosenkrantz</u> (Id.), <u>McQuillion v. Terhune</u> (Id.), <u>Biggs v. Terhune</u> (Id.). When an individual has a liberty interest protected by the Fourteenth Amendment, it cannot be arbitrarily denied by State government <u>Vitek v. Jones</u> (1980) 445 U.S. 480, pp. 488-489; <u>Greenholtz v. Nebraska Penal Inmates</u> (1970) 442 U.S. 1; <u>Morrissey v. Brewer</u> (1972) 408 U.S. 471. Accordingly, "[P]risoners are entitled to be free from arbitrary actions of prison officials that affect their constitutionally protected interests." <u>Wolff v. McDonnell</u> (1974) 418 U.S. 539, 558; <u>Hewitt v. Helms</u> (1983) 459 U.S. 460, 466; see also <u>Superintendent v. Hill</u> (1985) 472 U.S. 445, 457, holding a decision by prison officials cannot be "without support" or arbitrary. The California Supreme Court concurs, recognizing that Board decisions not based on evidence or relevant factors may deny prisoners their due process rights <u>In re Dannenberg</u> (2005) 34 Cal.4th 1061, 1071. Thus, the touchstone of Due Process is protection of the individual against arbitrary action by the government <u>Wolff v. McDonnell</u>, supra, 418 U.S. at 558.

According to state penal statutes, parole "shall normally" be granted unless a prisoner poses an unreasonable risk of danger to society (Penal Codes §§3041(a) and 3041(b). At petitioner's 2006 parole hearing, petitioner presented a plethora of evidence that he had undergone substantial change for the better and that he does not currently pose a danger to society. Yet, in spite of this showing, petitioner was denied parole primarily based on outdated, unchanging and static factors, specifically, the offense itself.

(Exhibit #2, p.94).  While the Board went on to characterize petitioner's

most recent psychological assessment as "inconclusive" (Exhibit #2, p.97)

petitioner strongly disagrees and points out that the board has a history

of discounting petitioner's favorable psychological evaluations.   At the

petitioner's 2002 hearing the Board characterized a psychological evaluation

by Staff Psychologist Dr. Gary Pesavento as "not negative"  but asked for

a new evaluation stating that some of the issues in the case had not been

dealt with very completely (Exhibit #4, p.3).    At petitioner's 1996

hearing, the Board characterized a psychological assessment summarizing

14 months of intensive therapy as "superficial" and recommended more therapy.

(Exhibit #5, p.2) despite a specific finding by a panel of therapists that

no further therapy was needed and that petitioner represented a "minimal

risk to society if released" (Exhibit #9, p.4).  The only other factor

cited by the Board in its decision was a statement that petitioner's

parole plans lacked "significant specificity and/or documentation"

(Exhibit #2, p.98) however at petitioner's 2002 parole hearing the Board

stated, "Regarding his parole plans, he appears to have some financial

resources and family support.  He certainly has job skills so parole

plans aren't a particular issue with the Board." (Exhibit #4, p.3).

        The Ninth Circuit addressed the constitutional propriety of the

Board's reliance on the commitment offense and other static factors in

Biggs v. Terhune (9th Cir., 2003) 334 F.3d 910.  Biggs was convicted of

first degree murder and challenged the Board's decision denying him parole

at his initial hearing.  Although the Ninth circuit found no evidence to

to support most of the Board's grounds for unsuitability, the court

nevertheless affirmed the Board's decision, reasoning "the parole board's

sole reliance on the gravity of the offense and conduct prior to

imprisonment to justify denial of parole can be initially justified as

18

1   fulfilling the requirements set forth by state law." (Id. at 916).

2   The court cautioned, however, that "Over time...should Biggs continue

3   to demonstrate exemplary behavior and evidence of rehabilitation, denying

4   him parole simply because of the nature of the offense would raise serious

5   questions involving his liberty interest." (Id.)  The Ninth Circuit also

6   stated, "A continued reliance in the future on an unchanging factor, the

7   circumstances of the offense, and conduct prior to imprisonment, run

8   contrary to the rehabilitative goals espoused by the prison system and

9   could result in a due process violation." (Id. at (917).

10      Although the Ninth Circuit did not hold when a due process violation

11  would occur, the California Court of Appeal and several United States

12  District Courts have found that the Board's reliance on unchanging

13  factors and the commitment offense in certain cases violated due process

14  (see, for example, In re Elkins (2006) 144 Cal.App.4th 475, 498, review

15  denied Nov. 8, 2006 ("Given the lapse of 26 years and the exemplary

16  rehabilitative gains made by [the prisoner] over that time, continued

17  reliance on [the] aggravating facts of the crime no longer amount to

18  'some evidence' supporting denial of parole."); In re Lee (2006) 43 Cal.

19  App.4th 1400, 1409 ("Like the Governor, we do not minimize the seriousness

20  of Lee's offense 19 years ago, for which society has legitimately

21  punished him.  No reasonable possibility exists, however, that Lee will

22  reoffend.  Other than his offenses here, he has led a crime-free life.")

23  Id. at 1412 ("Simply from the passing of time, Lee's crimes of almost 20

24  years ago have lost much of their usefulness in foreseeing the liklihood

25  of future offenses than if he had committed them five or ten years ago.");

26  Irons v. Warden of Cal. State Prison-Solano (E.D. Cal. 2005 358 F.Supp.2d

27  936, 947 ("In the instant case, the [Board] has apparently relied on these

28  unchanging factors at least four prior times in finding petitioner

1    unsuitable for parole.  Petitioner has continued to demonstrate exemplary

2    behavior and evidence of rehabilitation.  Under these circumstances, the

3    continued reliance on these factors at the 2001 hearing violated due process."

4    Internal citations omitted.); Rosenkrantz v. Marshall (C.D. Cal. 2006)

5    444   F.Supp.2d 1063, 1081-1082 ("In the circumstances of this case, the

6    [Board's] continued reliance on the nature of petitioner's crime to deny

7    parole in 2004 violated due process[.]  [C]ontinued reliance on the

8    unchanging facts of petitioner's crime makes a sham of California's parole

9    system and amounts to an arbitrary denial of petitioner's liberty interest.");

10   Evans v. Carey E.D. Cal. 2006) WL 1867543 at 6 ("Although the Ninth Circuit

11   in Biggs did not explicitly state when reliance on an unchanging factor

12   would violate due process, it makes sense that reliance on such a factor

13   becomes unconstitutional when the factor no longer has a predictive value.")

14       In Elkins, the prisoner was serving a sentence of twenty-five to life

15   after being convicted of first degree murder and robbery, with use of a

16   deadly weapon (Elkins, supra, 144 Cal.App.4th at 479).  He had served

17   twenty-six years (eleven years past his minimum parole date) and had been

18   denied parole at ten prior hearings (Id. at 499-500).  At his eleventh

19   hearing the Board granted Elkins parole, which the Governor subsequently

20   reversed (Id.)  Elkins had received positive psychiatric

21   evaluations, participated in self-help and vocational training, had

22   realistic parole plans, and had only received two disciplinaries during

23   his twenty-six years of incarceration (Id. at 483).  Both the Board

24   denials and the Governor's reversal relied primarily on the gravity of

25   the commitment offense (Id.).  The Elkins court vacated the Governor's

26   decision holding that the Governor's decision to reverse the grant of

27   parole based on the commitment offense lacked "some evidence" that

28   Elkins posed an unreasonable risk of danger (Id. at 502).  The court held

21

that the Governor's reliance on the remote immutable facts of the commitment

offense violated Elkin's due process rights (Id. at 500).

In Rosenkrantz v. Marshall, the prisoner had been denied parole on six

previous occasions on a sentence of seventeen years to life for a

conviction of second degree murder with the use of a firearm Rosenkrantz

v. Marshall, supra, 444 F. Supp.2d at 1082. The Board's rationale for

finding him unsuitable was based solely on the nature of the commitment

offense (Id. at 1084). However, the court found that "[a]fter nearly

twenty years of rehabilitation, the ability to predict a prisoner's future

dangerousness based simply on the circumstances of his or her crime is

nil." (Id.). The court held that, after such a long period, the pre-

commitment factors had lost all predictive value, and the Board's

continued reliance on them to deny parole violated due process "because

the facts surrounding the offense do not now constitute 'some evidence'

with some 'indicia of reliability' of petitioner's dangerousness." (Id.

at 1086). The court ordered Rosenkrantz released on parole (Id. at 1087-1088).

In Irons, the petitioner was serving a sentence of seventeen years to

life for second degree murder Irons v. Warden of Cal. State Prison-Solano,

supra, 358 F.Supp.2d 936, 939. In denying parole, the Board relied on

the circumstances of the commitment offense, specifically, that he

demonstrated a callous disregard for human life and the motive for the

crime was trivial (Id. at 944). The Board found that he had realistic

parole plans, no juvenile record, and minimal prior criminal history (Id.).

The court additionally found that the circumstances of the crime could

never change and therefore the Board could perpetually deny parole or,

at best, until some future panel arbitrarily found that the crimes

were not so callous or trivial (Id. at 947). As the court opined, a

prisoner's "liberty interest should not be determined by such an arbitrary

22

1   remote possibility." (id.).  The court held that the Board's continued

2   reliance on the facts of the commitment offense violated due process (Id.).

3       The facts of the petitioner's case, although different from Biggs,

4   Elkins, Rosenkrantz and Irons, are in no way less compelling.  Petitioner

5   has an exemplary record and has shown substantial change for the better.

6   Even though petitioner has a college degree and was a successful businessman

7   prior to his incarceration, he has nevertheless obtained extensive

8   training in computer programming (Exhibit #11, pp.12-14).  Petitioner

9   has completed numerous self-help groups and continues to train other

10  inmates as facilitators in conflict resolution through "Hands of Peace"

11  (Exhibit #11, pp. 2-10).  Petitioner has support letters from family and

12  friends and has been forensicly evaluated by multiple psychiatrists and

13  psychologists as having a minimal potential for violence if released to

14  the community (Exhibit #7, p.6) (Exhibit #8, p.6) (Exhibit #9, p.2).  More

15  significantly, petitioner has appeared before the Board on multiple

16  occasions (the most recent being 11 years past his minimum eligible

17  parole release date) and the Board continues to rely on the same, unchanging

18  static factors to deny parole.  If a prisoner's post conviction behavior

19  doesn't carry any weight and his current dangerousness is continually

20  evaluated on the unchanging circumstances of his offense, then there is

21  no difference between life with the possibility of parole and life

22  without the possibility of parole.  A prisoner's offense of more than two

23  decades ago will never change, and using this static factor as the

24  measuring stick to gauge petitioner's current dangerousness means he will

25  always be labeled an unreasonable risk of danger to society.  Like a hamster

26  running on a wheel and never getting anywhere, petitioner will be forever

27  completing one requirement or positive program after another but never get

28  any closer to release.  This makes a mockery of the parole system and, as

1   such, violates due process.

2       It might be argues that since petitioner has been scheduled for another

3   consideration hearing in 2009, he could not possibly be serving a sentence

4   of life without the possibility of parole, in which case petitioner would

5   disagree.  The Board routinely disregards the law to follow its own "no

6   parole" policy.  Current statistics support this contention (Exhibit #14,

7   pp.1-6), as well as do a growing number of state and federal cases against

8   the Board and Governor (see, for example, In re Ramirez (2001) 94 Cal.App.

9   4th 549; In re Smith (2003) 109 Cal.App.4th 871; In re Smith (2003) 114

10  Cal.App.4th 343; In re Scott (2004) 119 Cal.App.4th 871; In re Scott (2005)

11  133 Cal.App.4th 573; In re Elkins (2006) 144 Cal.App.4th 475; In re Lee

12  (2006) 143 Cal.App.4th 1400; McQuillion v. Duncan (9th Cir., 2002) 306

13  F.3d 895; Irons v. Warden of Cal. State Prison-Solano (2005) 358 F.Supp.

14  936; Rosenkrantz v. Marshall (2006) 444 F.Supp.2d 1063; Evans v. Carey

15  (E.D. Cal. 2006) WL 1867543). [1]

16      Regardless of the sentence imposed by the courts, in California today

17  life with the possibility of parole is virtually synonymous with life

18  without the possibility of parole.  Hence, as the above facts and

19  arguments clearly show, the Board's continual denial of petitioner's

20  parole based on unchanging, static factors and contrary to substantial

21  change for the better, is arbitrary and capricious and violates due process

22  as guaranteed by both state and federal Constitutions.

23

24  [1] Petitioner requests the Court take Judicial Notice of In re Criscione

25      (Exhibit #18) relative to the statistics developed and analyzed by the

26      Court in the case, and the Court's analysis of the Board's on-going

27      "no parole" policies.

28

                                    25

## PRAYER FOR RELIEF

Petitioner is without relief save by writ of Habeas Corpus.

**WHEREFORE**, having made a prima facie case for relief, petitioner prays that the court:

1) Issue the Writ of Habeas Corpus;

2) Issue an Order of Show Cause on respondents as to why relief should not be granted;

3) Make a determination as to whether respondents have violated petitioner's federal constitutional rights to due process;

4) Upon any finding that respondents have unlawfully denied petitioner's liberty interest or violated petitioner's due process rights, order respondents to vacate the decision of petitioner's 2006 parole hearing, hold a new hearing within 30 days, and grant a parole date;

5) Grant any relief necessary to ensure the protection of petitioner's federal constitutional rights.

**VERIFICATION**

I, Leslie Arthur Byrd, do hereby declare the following:

I am the petitioner in this action. I have read the foregoing Petition For Writ of Habeas Corpus and the facts stated therein are true of my own knowledge, except as to matters that are therein stated on my own information and belief, and as to these matters I believe them to be true.

I declare under penalty of perjury of the laws of California that the foregoing is true and correct, and that this declaration was executed on ____12/12/07____, at San Diego, California.

Petitioner, Pro Se.

27

## DECLARATION OF SERVICE BY MAIL

I, Sarah Horton, am a resident of San Diego County, in the State of California. I am over the age of eighteen (18) years, and I am not a party to the enclosed action. My address is:

> SARAH HORTON
> 4757 MANSFIELD ST.   APT. B
> SAN DIEGO, CA 92116

On __12/14/07__ , I served the foregoing Petition For Writ of Habeas Corpus, along with the Exhibits thereto, on the parties named herein below, by placing true copies thereof, enclosed in a sealed envelope with the postage thereon fully paid, in the United States Mail in San Diego, California, addressed as follows:

> UNITED STATES DISTRICT COURT
> NORTHERN DISTRICT OF CALIFORNIA
> 450 Golden Gate Avenue
> San Francisco, CA 94102-3483

I declare under penalty of perjury of the laws of California that the foregoing is true and correct, and this declaration was executed on __12/14/07__ , at San Diego, California.


_Sarah Horton_
Sarah Horton

28