1
2

Leslie Arthur Byrd
D-30420, F1-05-138L
P.O. Box 799001
San Diego, CA 92179-9001

3

4

E-filing          **FILED**

5

UNITED STATES DISTRICT COURT

DEC 1 7 2007

6

FOR THE NORTHERN DISTRICT OF CALIFORNIA  RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10

**CV 07        6375**

In re:

11

LESLIE ARTHUR BYRD
Petitioner, Pro Se

Case No. _____

12              )
13              )

**SBA**  **(PR)**

14

On Habeas Corpus

**DOCUMENTS IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS**

15

16

17

18

19

**EXHIBITS**

20

**10 - 18**

21
22
23
24
25
26
27
28

**EXHIBIT #10**

**LETTERS OF SUPPORT**

Nancy G. Byrd
1865 West Chapala Drive
Tucson, Arizona 85704
March 18, 2006

R.J. Donovan Correctional Facility
Attn: Board of Prison Hearings Desk
P.O. Box 799006
San Diego, CA 92179-9006

Board of Prison Hearings
Re: Byrd, L., D-30420

My husband of thirty-eight years, Leslie Arthur Byrd, has spent the majority of our married years in prison. I have missed him greatly and after the shock of having him gone and losing his support, the support of my best friend, I have continued to love the man he was and the man he is today.

Art has missed seeing his two daughters grow up. When he was sent to prison our youngest daughter was third grade and the oldest in fifth. Now they are living their own lives, but he has missed out on so much. He has been gone for dance recitals, band concerts, graduations, and weddings. He has missed out on good night kisses, checking out prom dates, and walks down wedding aisles. His daughters have been without fatherly advise, monetary backing, vacations together, and so much more.

Beyond the fact that we have suffered without him is the fact that he caused the death of a fellow human being. He deeply regrets this and will probably never forgive or understand his doing this. Art is and always was a person who respected life. One of my fondest memories was when we were at Sea World looking at the tidal pools. A small child was being careless with a sea anemone and Art took the time to tell the boy and our daughters that this was a living creature and needed to be treated with respect.

In prison, Art has tried not to waste his mind and talents. He took classes in computers when they were available, he has always enjoyed working as a clerk, and he has been a respected helper in *Hands of Peace*. I am proud of him for these efforts.

Art's health has become much worse in the last twenty-one years. He was diagnosed with multiple sclerosis thirty-three years ago and has had flare-ups on and off since that time. It was shortly after a particularly bad flare-up that he went to prison. Now, without the steady use of his legs he is unable to walk. At sixty he is slower to recover from set backs and needs to be home where he can get the care he needs.

I feel that my husband has served his time in punishment. Although nothing can truly make up for his crime he can be of better service to his family and humanity at home. I am a teacher fully vested in retirement and can support him if need be. I love him and want to spend my remaining years with him. Please grant him a parole date.

Respectfully,

*Nancy G. Byrd*

Exhibit #10 Page 1

Sarah C. Horton (formerly Byrd)
4757 Mansfield St., Apt. B
San Diego, CA 92116

March 25, 2006

R.J. Donovan Correctional Facility
Attn: Board of Prison Hearings Desk
P.O. Box 799006
San Diego, CA 92179-9006

Board of Prison Hearings
Re: Byrd, L., D-30420

Dear Members of the Board of Prison Hearings:

As the daughter of Leslie Arthur Byrd, D-30420, I am writing to show my support for him and the possibility of his release. He was a great father for the ten years of my life when he was a free man. He has missed so much of my family's lives that cannot be conveyed through phone calls, photos, and brief visits. He missed walking me, (or wheeling me as the case may be,) down the aisle on me wedding day. There have been countless other occasions in the lives of my family when he has been painfully missed.

My father has turned into an old man during his twenty one years of incarceration. He is confined to his wheelchair due to his increasingly debilitating multiple sclerosis. Although he has tried to make the best of prison life through his work there, being an intelligent man, my father has suffered the drudgery of an isolated unchanging world around him.

I beg of you to grant my father a release date. He is a harmless old man who regrets deeply what he has done. I know that as a free man he would contribute to society in a positive way rather than being a burden on taxpayers by remaining in prison. His release would mean so much to my family, especially my dear mother who has waited twenty one years for his homecoming. Please take this plea into consideration.

Sincerely,

*Sarah Horton*

Sarah Horton

Exhibit #10 Page 2

Samantha C. Byrd
464 West 27th Street Apt. 1-F
Chicago, Illinois 60661
March 17, 20616

R.J. Donovan Correctional Facility
Attn: Board of Prison Hearings Desk
P.O. Box 799006
San Diego, CA 92179-9006

Board of Prison Hearings
Re: Byrd, L., D-30420

My father, Leslie Arthur Byrd, has been a prisoner in the California Department of Corrections for over twenty years. During this time he has missed seeing my sister and me grow up. We have been punished by not having him near us in these years. I have missed him greatly and due to the location of my job have not been able to even visit him on a regular basis.

I feel that he has served his punishment. I would respectfully request his release from prison in the near future. He is needed at home and in our lives, and we want him back.

Sincerely,

Samantha C. Byrd

Exhibit #10 Page 3

February 21, 2006

Board of Prison Hearings
RE: Byrd, L., D-30420

This letter is written in support of Arthur Byrd's parole. I have written a variation of this letter for many years, and each time I write the Board of Prison Hearings I am more convinced that my brother's incarceration no longer serves society. Despite being a model prisoner, Art has served many years beyond his minimum sentence. He has a diagnosis of multiple sclerosis, is wheelchair dependent, and clearly is not a threat to society. His immediate and extended family continues to support him emotionally and is willing and able to assist financially, should he be released from prison. His wife has had a long career as an elementary school teacher and has financial resources for their senior years. Both of his siblings have family businesses that can assist in employment and health costs, if needed.

I work in a medical hemodialysis clinic that serves prisoners and I am well aware of the high costs of chronic medical care being billed to the State of California. In Arthur's case, it seems to be an unnecessary burden on the taxpayers. Art is a prisoner who is ready to re-enter society. He clearly has served his time, has remorse for the past, has a good prison record, and poses no threat to society. I strongly urge you to show compassion and finally grant Arthur parole.

Thank you for your consideration.

Sincerely,

Carol Sullivan

Carol Sullivan

Exhibit #10 Page 4

*Please put in file for L. Art Byrd for his upcoming hearing.*

030420

March 6, 2006

Dear Board of Prison Hearings:

I am writing on behalf of my brother, L. Arthur Byrd. He has been incarcerated for a number of years and is shortly up for parole.

My brother committed a horrible crime for which we are all deeply sorry. However, he is now in a wheelchair permanently and has extreme muscular weakness. He is no longer a threat to anyone and is, in fact, a great expense to the State of California for his necessary medications. I don't know what purpose would be served to keep him longer.

I know there is a campaign that is always waged by the newspapers in Northern California whenever he comes up for parole. The family of his victim, understandably, wants him to remain in jail. However, he has led a model life both before and after his crime. He is neither physically capable nor psychologically predisposed to commit any other crimes. The role his disease, multiple sclerosis, played in his crime is open to question. MS is one of the very few diseases that crosses the blood brain barrier and can cause such things as emotional instability and impotence. Although MS does not turn one into a murderer, the brain functions affected by the disease are only beginning to be understood. My point is only that it may have played a role in what happened that day many years ago.

Art has a wife who is willing to still support him. If released, he would move to Tucson to be with her. He has a family that would ensure his reintegration into society and I can assure you that neither the State of California nor society in general would find him a further burden.

My father is 87 years old and served his country throughout World War II at every major battle. I know this has been his greatest disappointment and we all would like him to see Art going home and being productive before his dies. I hope you will find it within yourselves to show Art some mercy and let him be released.

Sincerely,

Shirley Rector

Exhibit #10 Page 5

25 February 2006

**Correctional Counselor I and**
**The Board of Prison Hearings**

RE:    Inmate L. Byrd
       D-30420

Dear Sir/Madam:

This letter of support is for Inmate Byrd, D-30420, who is scheduled to appear before a Board of Prison Hearings for parole consideration in the near future.

Inmate Byrd and I served part of our incarceration together at Richard J. Donovan Correctional Facility. Inmate Byrd and I met while working together in the Facility 4 Program Office. Our friendship grew and together we spent time working as clerks in support of the Program Staff, Facility Captain and Associate Warden. I found Inmate Byrd to be a quiet and reserved man, a model prisoner with whom I have great respect.

I paroled in March of 1998. Upon completion of my parole in 2001, I vowed to return to the prisons and visit those brothers which had befriended me and had made a positive impact on my own life during my incarceration. Now, even as an accomplished professional in the world business community, it is most important to me to take time to write and visit Inmate Byrd at RJDCF Prison. Inmate Byrd is not a threat to society, and with his current medical care costing the state a large expense, he is an ideal candidate for parole. I have met his family and he has strong family support from his wife and children.

Although I can offer nothing more than a kind word on the behalf of Inmate Byrd--because of my own status as an ex-felon--I would still challenge you look closely a the man I know, and thoughtfully consider his parole release. For he is worthy to be given a second chance at freedom, and if given that chance, to prove he can be successful, law-biding citizen while on parole and beyond. As his health erodes with each passing day, please give him the chance to prove himself.

Best regards,

*Rod Stark*

Dr. Rod Stark

Exhibit #10 Page 6

# LADAR & KNAPP

ATTORNEYS AT LAW

507 POLK STREET, SUITE 310
SAN FRANCISCO, CALIFORNIA 94102-3339

JERROLD M. LADAR
JOYCE B. LADAR
BERNARD L. KNAPP

TELEPHONE (415) 928-2333
TELECOPIER (415) 928-4499

March 22, 1995

Board of Prison Terms
State of California
Attention: CCI Long
Richard J. Donovan Correction Facility
280 Alta Road
San Diego, CA 92179

Re:  Leslie Arthur Byrd -- Parole

Dear CCI Long:

I was one of Mr. Byrd's attorneys at his trial in Marin
County. He was charged with first degree murder and convicted
of second degree murder, the jury having acquitted him of
first degree.

His social history, past and present mental state, past
criminal history (none), his behavior from the time he was
small through the offense were all chronicled in the lengthy
transcript of trial. An extensive history of his background
and the circumstances leading to and causing the offense were
testified to by Dr. Roger Freed, M.D., a psychiatrist and Ann
Coho, a psychologist, who tested Mr. Byrd. All these materials
and their testimony were placed in the record in open court.
Mr. Byrd had offered to plead guilty to second degree murder,
accepting responsibility therefore, and stating his remorse
for the offense, but this offer was rejected by the District
Attorney, thus forcing Mr. Byrd and the County to the extended
trial and expense to achieve a conviction for the offense he
had offered to admit to in the first place.

The extensive psychiatric and psychological review of Mr.
Byrd's case reliably indicated that he had no previous record
of violence. He was raised in a home where neither he nor his
siblings suffered unusual physical abuse. Over a relatively
short period of time he engaged in consensual bondage sex with
a series of prostitutes from San Francisco, however he did not
inflict injury upon any of them, other than the deceased.
There was absolutely no indication of a history of mental
problems related to the defendant until a period of extreme
stress, which ran less than a year prior to the unfortunate
act resulting in Miss Cythia Engstrom's death. His mental

Exhibit #10 Page 7

Page 2

situation during this brief period was complicated by the presence of an episode of multiple sclerosis (MS), and his psychological testing revealed absolutely no psychiatric factors which would indicate that he had any potential for recidivism.

Indeed, in respect to the psychiatric and psychological evidence presented at the trial, the prosecution offered no expert witnesses of their own, and the jury accepted the analyses of Dr. Freed and Miss Coho. (Otherwise, they would have returned a different verdict.) The lack of a previous record, the stable social history (Mrs. Byrd stood by him throughout the proceedings), his expressions of remorse, the fact that he committed his crime as a result of a significant stress in his life all are factors which tend to show suitability for parole.

I am not aware of the contents of your file in respect to his understanding and plans for the future and his institutional behavior, but I would assume that they are all positive.

I write to have this letter placed in the file and to inquire whether you have the transcript at the time of sentencing or the trial transcripts (Dr. Freed was on the stand for a substantial number of days).

Very truly yours,

JERROLD M. LADAR

Jerrold M. Ladar

JML/jp
1:2prlbd
cc: Arthur Byrd

Exhibit #10 Page 8

**EXHIBIT # 11**

**LAUDATORY / SELF-HELP / WORK CHRONOS**

Page 1

NAME and NUMBER                    BYRD, L., D-30420                    CDC-128-B (4/74)

This is the third recommendation I have written regarding the release of Inmate BYRD. I have known Inmate BYRD for over six years and have served as his direct supervisor on several occasions. Inmate Byrd has always displayed a high degree of skill and maturity in his job performance. In addition to producing a high volume of quality work, he has been instrumental in keeping the paperwork flowing in a timely manner through his excellent working relationships with both staff and other inmates. Several times Inmate BYRD has alerted me to situations in the office and then worked with me to avoid them. He is extremely reliable and maintains a professional attitude at work which includes exhibiting discretion toward any information that crosses his desk.

I would also like to state again that, based on my 31 years experience in the Department of Corrections, I do not feel that Inmate BYRD would re-offend if released from prison. This is not a statement I make lightly. Inmate BYRD is only the second inmate for which I have made such an evaluation. I am aware of Inmate BYRD's commitment offense, but based on my day-to-day observations of him and his interaction with staff, I feel comfortable with my evaluation. My opinion is further supported by Inmate BYRD's deteriorating physical condition. The increasing cost of maintaining Inmate BYRD in prison represents, in my opinion, both an unwarranted and unnecessary cost to the State.

ORIG: C-file                            J. W. DRESBACH
Writer                                  Facility Captain
CC-I R. Ravelo                          Facility 1
Inmate
DATE 01/27/06    LAUDATORY – PAROLE RECOMMENDATION RJDCF        GENERAL CHRONO

Exhibit #11 Page 1

NAME and NUMBER BYRD,     D30420          RJDCF                                CDC-128-B (Rev. 4/74)

The above named inmate has completed 88 hours of training required to become a facilitator for the Friends Outside Creative Conflict Resolution workshops on  JANUARY 13, 14, 15, 2006. Inmate _____ BYRD _____, has received his Training for Trainers Certificate, is eligible to be an Inside Facilitator for future Hands of Peace/Friends Outside workshops, and is commended for his support, interest and conduct in the workshop projects here at R.J. Donovan Correctional Facility.

Original:  Records
    cc:    CCI
           Chapel Files
           Inmate

                                        Protestant Chaplain
                                        Activity Group Sponsor

DATE        JANUARY 20, 2006           (INFORMATIVE)              GENERAL CHRONO


NAME and NUMBER          BYRD, L. A., D-30420              Page 1
                                                          CDC-128-B (4/74)

Inmate Byrd is to be commended for his substantial role in serving as a member of the Management Team, preparing other inmates to become Inside Facilitators for the Hands of Peace/Alternative to Violence Project Creative Conflict Resolution Workshops. He has not only participated in the training of other facilitators, but has also been instrumental in actively recruiting others inmates to both participate in and become facilitators in the program. The outside facilitators consider Inmate Byrd a valuable resource in the continuing self-help program in the prison community.

                                        Dr. WILLIAM O. BROWN
                                        Protestant Chaplain

C-File
Chapel Files
CCI
Inmate

DATE      01/23/06          LAUDATORY CHRONO                    RJDCF

                                                          Exhibit #11 Page 2

CDC-128-B (Rev. 4/74)

NAME and NUMBER        BYRD,

This is the second recommendation I have written regarding the Release of Inmate BYRD.  I have known Inmate BYRD for over five years and have also served as his direct supervisor on several occasions.  Inmate BYRD has always displayed a high degree of skill and maturity in his job performance.  In addition to producing a high volume of quality work, he has been instrumental in keeping the paperwork flowing in a timely manner through his excellent working relationships with both staff and other inmates.  Several times Inmate BYRD has alerted me to situations in the office and then worked with me to avoid them.  He is extremely reliable and maintains a professional attitude at work which includes exhibiting discretion toward any information that crosses his desk.

I would also like to state again that, based on my over 30 years of experience in the Department of Corrections, I do not feel that Inmate BYRD would re-offend if released from prison.  This i not a statement I make lightly.  Inmate BYRD is only the second inmate for which I have made such an evaluation.  I am aware of Inmate BYRD's commitment offense, but based on my day-to-day observations of him and his interaction with staff, I feel comfortable with my evaluation.  My opinion is further supported by Inmate BYRD's deteriorating physical condition.  The increasing cost of maintaining Inmate BYRD in prison represents, in my opinion, both an unwarranted and a unnecessary cost to the State.

ORIG:  C-FILE
  cc:   BPT Desk
        CCI R. Ravelo
        Writer
        Inmate

J. W. DRESBACH
Facility Captain
Facility III

(PAROLE RECOMMENDATION)        RJDCF        GENERAL CHRO

DATE   09/06/05

Exhibit #11 Page 3

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-128-B    REV. 4/74

**NAME and NUMBER**          **BYRD, L.**          **D-30420**

I have known Inmate BYRD for approximately five years, during which period I have been his supervisor on several occasions. For the past two years, he has been assigned as the Facility IV Reception Center Captain's Clerk under my direct supervision. Inmate BYRD has always displayed a high degree of skill and maturity in his job performance. He not only produces a high volume of quality work, but he has been instrumental in keeping the paperwork flowing in a timely manner through his excellent working relationships with both staff and other inmates. Several times Inmate BYRD has alerted me to situations in the office that represented potential problems and then worked with me to avoid them. He is extremely reliable and maintains a professional attitude toward his work that includes exhibiting discretion toward any information that crosses his desk.

I would also like to state that, based on my nearly 29 years of experience in the Department of Corrections, I do not feel that Inmate BYRD would re-offend if released from prison. This is especially true in light of his deteriorating physical condition. This is not a statement I make lightly. Inmate BYRD is only the second inmate in 29 years for which I have made such an evaluation. I am aware of Inmate BYRD's commitment offense, but based upon my day-to-day observations of him and his interaction with staff, I feel comfortable in my evaluation.

ORIG:     C-File
   cc:      CCI L. Muniz
            Writer
            Inmate

_____

J. W. DRESBACH
Facility Captain
Facility IV Reception Center

DATE:  02/05/04          (LAUDATORY)          RJDCF          GENERAL CHRONO

Exhibit #11 Page 4

NAME and NUMBER    BYRD, L    D30420    5–138    CDC-128-B (Rev. 4/74)

The above named inmate has successfully completed the Basic, 22 hour, Hands of Peace/Friends Outside Creative Conflict Resolution Workshop, held on: JAN 14,15,16,2005          . Inmate participation was voluntary, and inmate  BYRD                    , D30420    , is commended for his interest and conduct throughout the program.

Original: Records
     cc:    CCI
            Chapel files
            Inmate

                                STATE CHAPLAIN
                                GROUP ACTIVITY SPONSOR

DATE  1,31,05                  (LAUDATORY)                   GENERAL CHRONO

---

NAME and NUMBER    Byrd    D-30420    F1-5-138L    CDC-128-B (Rev. 4/74)

A. Byrd        PARTICIPATED IN THE HANDS OF PEACE/FRIENDS OUTSIDE FACILITATOR

TRAINING-ON-TRAINING WORKSHOP ON    November 17,2003

THE WORKSHOP INVOLVED 10 HOURS OF TRAINING BY HANDS OF PEACE OUTSIDE FACILITATORS,

FOR TECHNIQUES AND PROGRAMS FOR THE CREATIVE CONFLICT RESOLUTION WORKSHOPS.

ORIGINAL:  RECORDS
     CC:     CCI
             CHAPEL FILES
             INMATE

                          STATE CHAPLAIN

DATE  November 17,2003          (LAUDATORY)                 GENERAL CHRONO

---

NAME and NUMBER    BYRD D-30420 .    CDC-128-B (Rev. 4/74)

             PARTICIPATED IN THE HANDS OF PEACE/FRIENDS OUTSIDE FACILITATOR

TRAINING-ON-TRAINING WORKSHOP ON

THE WORKSHOP INVOLVED 10 HOURS OF TRAINING BY HANDS OF PEACE OUTSIDE FACILITATORS,

FOR TECHNIQUES AND PROGRAMS FOR THE CREATIVE CONFLICT RESOLUTION WORKSHOPS.

ORIGINAL:  RECORDS
     CC:     CCI
             CHAPEL FILES
             INMATE

                          STATE CHAPLAIN

DATE  08-08-03                 (LAUDATORY)                  GENERAL CHRONO

Exhibit #11 Page 5

NAME and NUMBER    BYRD, L.    D-30420    F1-05-138L    CDC-128-B (Rev. 4

Inmate BYRD , L., D-30420, served as an Inside Facilitator Mentor, mentoring new
Facilitators during the Hands of Peace/Friends Outside Creative Conflict Resolution
Workshop held on February 7, 8, 9, 2003.  To become a Facilitator involves a minimum of
88 hours of training.  Inmate BYRD's support, interest and conduct during this workshop
are to be commended.

Original:  C-FILE
      cc:  CCI
           Chapel Files
           Inmate

Chaplain B. Brown
State Chaplain
Activity Group Sponsor

DATE    2-09-03         (LAUDATORY)    RJDCF         GENERAL CHRONO

---

NAME and NUMBER    BYRD    D30420    F1-5-138L    CDC-128-B (Rev. 4/74)

BYRD, D30420         SERVED AS AN INSIDE FACILITATOR FOR THE HANDS OF PEACE/
FRIENDS OUTSIDE CREATIVE CONFLICT RESOLUTION WORKSHOP ON    OCTOBER 18-20, 2002
TO BECOME A FACILITATOR INVOLVES A MINIMUM OF 88 HOURS OF TRAINING.  HIS SUPPORT,
INTEREST AND CONDUCT IN THE WORKSHOP PROJECTS ARE COMMENDABLE.

ORIGINAL:  RECORDS
      CC:  CCI
           CHAPEL FILES
           INMATE

STATE CHAPLAIN
ACTIVITY GROUP SPONSOR

DATE   OCTOBER 22, 2002      (LAUDATORY)         GENERAL CHRONO

---

NAME and NUMBER  BYRD         D30420    F1-5-138L    CDC-128-B (Rev. 4/74)

BYRD, D30420         SERVED AS AN INSIDE FACILITATOR FOR THE HANDS OF PEACE/
FRIENDS OUTSIDE CREATIVE CONFLICT RESOLUTION WORKSHOP ON  JULY 5-7, 2002
TO BECOME A FACILITATOR INVOLVES A MINIMUM OF 88 HOURS OF TRAINING.  HIS SUPPORT,
INTEREST AND CONDUCT IN THE WORKSHOP PROJECTS ARE COMMENDABLE.

ORIGINAL:  RECORDS
      CC:  CCI
           CHAPEL FILES
           INMATE

STATE CHAPLAIN
ACTIVITY GROUP SPONSOR

DATE  JULY 9, 2002         (LAUDATORY)         GENERAL CHRONO

Exhibit #11 Page 6

NAME and NUMBER    BYRD    D30420    F1-5-138L    CDC-128-B (Rev. 4/74)

BYRD, D30420,        SERVED AS AN INSIDE FACILITATOR FOR THE HANDS OF PEACE/
FRIENDS OUTSIDE CREATIVE CONFLICT RESOLUTION WORKSHOP ON APRIL 5-7, 2002.
TO BECOME A FACILITATOR INVOLVES A MINIMUM OF 88 HOURS OF TRAINING.  HIS SUPPORT,
INTEREST AND CONDUCT IN THE WORKSHOP PROJECTS ARE COMMENDABLE.

ORIGINAL:  RECORDS
      CC:  CCI
           CHAPEL FILES
           INMATE

                              STATE CHAPLAIN
                              ACTIVITY GROUP SPONSOR

DATE APRIL 8, 2002          (LAUDATORY)              GENERAL CHRONO

---

NAME and NUMBER BYRD    D-30420    2-105L    CDC-128-B (Rev. 4/74)

The above named inmate has successfully completed participation as an Inside
Facilitator in the following 22 hour Hands of Peace/Friends Outside Creative
Conflict Resolution workshop held on NOVEMBER 3-5, 2000          .  Par-
ticipation as a Facilitator is voluntary and inmate        BYRD          ,
is commended for his conduct, interest, and support in the Hands of Peace/
Friends Outside project.

Original: Records
      cc: CCI
          Chapel Files
          Inmate
                              CHAPLAIN C. M. BREWER
                              Workshop Coordinator

DATE    NOVEMBER 6, 2000        (LAUDATORY)            GENERAL CHRONO

---

NAME and NUMBER    BYED, A.    D-30420    1-2-105L    CDC-128-B (Rev. 4/74)

The above named inmate has successfully completed the Basic, 22 hour,
Hands of Peace/Friends Outside Creative Conflict Resolution workshop,
held on:    MAY 5 - 7, 2000        .  Inmate participation was
voluntary, and inmate BYRD              ,    D-30420   , is commended
for his interest and conduct throughout the program.

Original: Records
      cc: CCI
          Chapel Files
          Inmate
                              CHAPLAIN C. M. BREWER
                              Workshop Coordinator

DATE  5-7-00          (LAUDATORY)              GENERAL CHRONO

Exhibit #11 Page 7

NAME and NUMBER    **BYRD, A., D-30420**    **F1-02-105L**    CDC-128-B (Rev. 4/74)

The above-named inmate has successfully completed a Morals and Values Class which deals with social issues and is designed to assist the inmate in the development of socialization skills. This inmate is to be commended for his participation in the class and the effort he put forth.

Orig: Central File
  cc: Inmate
      Chaplain File

Rabbi N. Pollack, Ph.D.
Facility II Chaplain

DATE  4/11/00          (INFORMATIVE)                    GENERAL CHRONO

NAME and NUMBER    **BYRD, L.    D-30420    F1-02-225U**    CDC-128-B (Rev. 4/74)

The above named inmate has successfully completed the Basic, 22 hour, Hands of Peace/Friends Outside Creative Conflict Resolution workshop, held on: __AUGUST 11, 12, 13, 1995__ . Inmate participation was voluntary, and inmate _____ **BYRD** _____, __D-30420__, is commended for his interest and conduct throughout the program.

Original: Records
  cc: CCI
      Chapel Files
      Inmate

CHAPLAIN C. M. BREWER
Workshop Coordinator

DATE      8-13-95        (LAUDATORY)                    GENERAL CHRONO

NAME and NUMBER   BYRD, D-30420, 2-105L    CDC-128-B (Rev. 4/74)

The above named inmate has successfully completed the Advanced, 22 hour, Hands of Peace/Friends Outside, Creative Conflict Resolution Workshop held on __AUGUST 1-3, 1997__ . Inmate participation was voluntary, and inmate ____ **BYRD** ____, CDC Number, __D-30420__, is commended for his interest and conduct throughout this program.

Original: Records
  cc: CCI
      Chapel Files
      Inmate

CHAPLAIN C. M. BREWER
Activity Group Sponsor

DATE   8/12/97            (LAUDATORY)                    GENERAL CHRONO

Exhibit #11 Page 8

NAME and NUMBER    BYRD, L.  D-30420  F1-02-105L                          CDC-128-B (Rev. 4/74)

During my assignment as Facility 4 Third Watch Program Lieutenant, Inmate BYRD has worked
directly for me as the Lieutenant's Clerk.  For approximately one (1) year, Inmate BYRD has per-
formed his duties in an exceptional manner completing a high-volume of tasks accurately, efficiently
and with little supervision.  Inmate BYRD is proficient at disciplinary processing, report prepara-
tion, CDC-602 Inmate Appeal formatting, general memoranda and office work.  Inmate BYRD is
reliable and respectful and is the most competent clerk I have supervised.

Original:  C-File
    CC:   CC-I
          Writer                          A. J. VISS
          Inmate                          Correctional Lieutenant
                                          Facility 4 Reception Center

DATE  October 30, 1996      (LAUDATORY CHRONO)    RJDCF    GENERAL CHRONO

---

NAME and NUMBER  BYRD, L.        D-30420      F1-02-105L        CDC-128-B (Rev. 4/74)

Inmate BYRD, L., D-30420, has worked as the Facility 4 Lieutenant's Clerk
under my direct supervision for approximately seven (7) months.  During that
time Inmate BYRD has displayed exceptional skills, especially in the areas of
disciplinary processing, report preparation, Incident Reports and general
office procedures.  He has proven himself to be prompt, reliable and trustworthy
in the performance of his duties.  He requires little supervision and gets
along well with both staff and inmates.  I would recommend Inmate BYRD to any
prospective supervisor.

ORIG: C-FILE
  cc: CC-I
      Writer                       J. S. MACIAS
      Inmate                       Correctional Lieutenant
                                   RJD Correctional Facility

DATE  6-18-97        LAUDATORY        RJDCF        GENERAL CHRONO

---

NAME and NUMBER    BYRD      D-30420      1-2-105L      CDC-128-B (Rev. 4/74)

The above-named inmate has completed the Breaking Barriers Program.
This program was developed by the Pacific Institute in Seattle, Washington,
and assists in the development of socialization skills that help a person
upon reentry into society.  This inmate is to be commended for his effort
and participation in this program.

DIST:
Orig: Central File                  Rabbi N. Pollack, Ph.D.
  cc: Chaplain                      Facility II Chaplain
      Inmate                        Richard J. Donovan Correctional Facility

DATE  7-10-96        (INFORMATIVE)                    GENERAL CHRONO

Exhibit #11 Page 9

NAME and NUMBER  BYRD, LESLIE, D-30420, 1-2-105L                    CDC-128-8 (Rev. 4/74)

The above named inmate has successfully completed the Advance, 22 hour,
Hands of Peace/Friends Outside Creative Conflict Resolution workshop held
on   MARCH 15-17, 1996        .  Inmate participation was voluntary,
and inmate    BYRD            ,   D-30420  , is commended for his interest
and conduct throughout this program.

Original: Records
      cc: CCI
          Chapel Files
          Inmate

_____
CHAPLAIN C. M. BREWER
Workshop Coordinator


DATE   MARCH 19, 1996            (LAUDATORY)            GENERAL CHRONO


NAME and NUMBER BYRD, L.        D-30420      F1-02-105L          CDC-128-8 (Rev. 4/74)

Inmate BYRD, L., D-30420 has worked for me as Lieutenant's Clerk in the Facility 4 Reception
Center Program Office for approximately one (1) year.  During that time he had demonstrated
exceptional skills in the areas of disciplinary processing, report preparation and general office
procedures.  Inmate BYRD has proven himself to be prompt, reliable and trustworthy and performs
all tasks in an exemplary manner.  He is a self-starter who needs little or no supervision.
Inmate BYRD gets along well with both staff and inmates.  I would highly recommend Inmate
BYRD as a clerk to any prospective supervisor.

Original: Central File
      cc: Counselor            _____
          Inmate               D. G. SMITH, Correctional Sergeant
          Writer               Facility 4 Program Office 3rd Watch
                               RJD Correctional Facility


DATE   5-30-96         LAUDATORY CHRONO         RJDCF   GENERAL CHRONO


NAME and NUMBER   BYRD, L.      D-30420      F1-02-225U      CDC-128-8 (Rev. 4/74)

Inmate BYRD, D-30420, has served as the Facility 4 Program Clerk under my supervision for
approximately four (4) months.  His duties during that period consisted of typing CDC-115's,
Investigative Reports, Disciplinary Dispositions, Memoranda and other documents.  He also
maintained a number of daily and monthly records including Meal Reports and the Daily Activity
Report.  Inmate BYRD has proven to be an excellent clerk, completing a high volume of work in
an accurate and timely manner.  He maintains good working relationships with both staff and
fellow inmates and is highly reliable.  I recommend him to any prospective supervisor who is
looking for a good clerk.

ORIG:  C-File
  cc:  CCI Long
       Writer                  M. G. GRISSOM
       Inmate                  Correctional Lieutenant
                               Facility 4, Third Watch


DATE   12-19-95        (LAUDATORY)        RJDCF        GENERAL CHRONO

Exhibit #11 Page 10

NAME NUMBER    BYRD, D-30420                    (%)                    C-14-142-L.    CDC 128-B (Rev. 4/74)

Inmate BYRD, D-30420, has been assigned as a Program Lieutenant's Clerk for more than one
year. During that time he has demonstrated exceptional performance in the completion of his
duties. He gets along well with both staff and inmates, is very reliable, and produces a
high volume of quality work. I would recommend him highly to any prospective supervisor.
I feel that the constant effort which he has displayed, which includes numerous hours of
voluntary overtime, entitles him to this laudatory chrono.

Orig:  C-FILE
   cc:  CC-I
        WRITER                                        L. FERRARI
        INMATE                                        Correctional Lieutenant
                                                      Mule Creek State Prison


DATE  2/8/90        (LAUDATORY CHRONO)        MCSP-128B        GENERAL CHRONO

---

NAME  BYRD        CDC No. D30420        SUBJ:  "VIEWS" PARTICIPATION

Inmate _____BYRD_____, CDC No. _D30420_ has regularly
attended the MCSP Victim Education Workshop Series (VIEWS) group in Facility
"C" for over five months. He has actively participated in group discussions
and has shown a sincere interest and has improved his understanding of the
impact of crime on victims. As group sponsors, we especially appreciate this
inmate's positive contributions to the objectives of the VIEWS program and
encourage him to continue his education and awarenesss concerning victims.

_M. Aguirre_                        _R. Johnson_
M. Aguirre, VIEWS Sponsor           R. Johnson, VIEWS Sponsor

cc:  Warden
     P.A.
     Inmate
     C-File            Laudatory Chrono        (MCSP)        CDC 128-B


Exhibit #11 Page 11

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**GRADE**
**ATTITUDE** S=SATISFACTORY
U=UNSATISFACTORY

**TOTAL CERTIFICATION UNITS IN COURSE:** 13

VOCATION (VOC) : 13
ADULT BASIC EDUCATION (ABE) : 0
GENERAL EDUCATION DEVELOPMENT (GED) :
HIGH SCHOOL (H.SCH) :
ENGLISH SECOND LANGUAGE (ESL) :

ADAPTABILITY= **S**
CONDUCT= **S**
COOPERATION= **S**
DEPENDABILITY= **S**
INITIATIVE= **S**

TOTAL CERTIFICATION UNITS PRIOR TO QUARTER: 6

**SPECIFIC CERTIFICATION UNITS COMPLETED:** V01.01.01-.06, .11
DATE STUDENT ENROLLED: 1/09/91          DATE STUDENT TERMINATED:
REASON FOR TERMINATION:

**COMMENTS:** Third Quarter.  Highly motivated and professional.  Employable.  Co-author of a major System "Library System".  Should be certified in one year and be given ACP exam.

DATE OF CHRONO: **9-30-94**          GRADE: **S**          INSTRUCTOR: Michael MacDonald
COURSE TITLE: *Vocational Computer Technology*

CDC#: D-30420          NAME: **Byrd, Art**          INSTITUTION:  **MCSP-IONE**

CDC 128-E (7/89)

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**GRADE**
**ATTITUDE** S=SATISFACTORY
U=UNSATISFACTORY

**TOTAL CERTIFICATION UNITS IN COURSE:** 13

VOCATION (VOC) : 13
ADULT BASIC EDUCATION (ABE) : 0
GENERAL EDUCATION DEVELOPMENT (GED) :
HIGH SCHOOL (H.SCH) :
ENGLISH SECOND LANGUAGE (ESL) :

ADAPTABILITY= **S**
CONDUCT= **S**
COOPERATION= **S**
DEPENDABILITY= **S**
INITIATIVE= **S**

TOTAL CERTIFICATION UNITS PRIOR TO QUARTER: 8

**SPECIFIC CERTIFICATION UNITS COMPLETED:** V01.01.01 - .07, .11
DATE STUDENT ENROLLED: 1/09/91          DATE STUDENT TERMINATED:
REASON FOR TERMINATION:

**COMMENTS:**  First  Quarter.  Highly  motivated  and  professional.    Exceptional organizational skills.  Employable.  Working on "Library System".

DATE OF CHRONO: **3-31-94**          GRADE: **S**          INSTRUCTOR: Michael MacDonald
COURSE TITLE: *Vocational Computer Technology*

CDC#: **D-30420**          NAME: **Byrd, Art**          INSTITUTION:  **MCSP-IONE**

**EDUCATION PROGRESS REPORT**

CDC 128-E (7/89)

Exhibit #11 Page 12

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**GRADE**
**ATTITUDE** S=SATISFACTORY
U=UNSATISFACTORY

**TOTAL CERTIFICATION UNITS IN COURSE:** 10

VOCATION (VOC) : 10
ADULT BASIC EDUCATION (ABE): 0
GENERAL EDUCATION DEVELOPMENT (GED) :
HIGH SCHOOL (H.SCH) :
ENGLISH SECOND LANGUAGE (ESL) :

ADAPTABILITY= **S**
CONDUCT= **S**
COOPERATION= **S**
DEPENDABILITY= **S**
INITIATIVE= **S**

TOTAL CERTIFICATION UNITS PRIOR TO QUARTER: 5

**SPECIFIC CERTIFICATION UNITS COMPLETED:** V01.01.01,.02,.05,.06,07
DATE STUDENT ENROLLED: 1-09-91
REASON FOR TERMINATION:                    DATE STUDENT TERMINATED:

**COMMENTS:** Fourth Quarter. Center Member responsible for a team of trainee programmers. Has started to work on shop projects and requirements. Exceptional work and organizational skills. Is qualified to be an Apprentice should more positions be created.

---

DATE OF CHRONO: 12-31-92        GRADE: **S**        INSTRUCTOR: Michael MacDonald
COURSE TITLE: *Vocational Computer Technology*

CDC#: D-30420            NAME: Byrd        INSTITUTION: **MCSP-IONE**
**EDUCATION PROGRESS REPORT**

STATE OF CALIFORNIA                                CDC 128-E (7/89)
                                          DEPARTMENT OF CORRECTIONS

**GRADE**
**ATTITUDE** S=SATISFACTORY
U=UNSATISFACTORY

**TOTAL CERTIFICATION UNITS IN COURSE:**

VOCATION (VOC) :10
ADULT BASIC EDUCATION (ABE) :0
GENERAL EDUCATION DEVELOPMENT(GED) :0
HIGH SCHOOL (H.SCH) :0
ENGLISH SECOND LANGUAGE (ESL) :0

ADAPTABILITY= **S**
CONDUCT= **S**
COOPERATION= **S**
DEPENDABILITY= **S**
INITIATIVE= **S**

**TOTAL CERTIFICATION UNITS THIS QUARTER:** 5

**SPECIFIC CERTIFICATION UNITS COMPLETED:** V01.01.01,.02,.05,.06,.07
DATE STUDENT ENROLLED: 1/9/91        DATE STUDENT TERMINATED:
                                        REASON STUDENT TERMINATED:

**COMMENTS:SECOND QUARTER.**
Completed Panel IV on 5/21/92. Exceptional progress as demonstrated by achieving Center Phase in less than eighteen months. Has begun training other students. Will soon be given assignment of Team Leader.

---

DATE OF CHRONO: 7-1-92        GRADE:   **S**        INSTRUCTOR: Michael MacDonald

COURSE TITLE: *Vocational Computer Technology*

CDC#: D-30420                NAME: BYRD, LESLIE        INSTITUTION: **MCSP-IONE**
**EDUCATION PROGRESS REPORT**                CDC 128-E (7/89)

Exhibit #11 Page 13

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**GRADE
ATTITUDE** S=SATISFACTORY
U=UNSATISFACTORY

**TOTAL CERTIFICATION UNITS IN COURSE:**

VOCATION (VOC):10
ADULT BASIC EDUCATION (ABE):0
ADAPTABILITY= **S**                 GENERAL EDUCATION DEVELOPMENT(GED):0
CONDUCT= **S**                       HIGH SCHOOL (H.SCH):0
COOPERATION= **S**           ENGLISH SECOND LANGUAGE (ESL):0
DEPENDABILITY= **S**
INITIATIVE= **S**           **TOTAL CERTIFICATION UNITS THIS QUARTER:**3

**SPECIFIC CERTIFICATION UNITS COMPLETED:** V01.01.01,.05,.06.
DATE STUDENT ENROLLED: **1-9-91**          DATE STUDENT TERMINATED:
                                                        REASON STUDENT TERMINATED:

**COMMENTS:FIRST QUARTER.** Exceptional performance! Work is detailed, accurate and
prompt. Shows all the personal, organizational, and technical skills needed to
progress in the trade.

DATE OF CHRONO: **4-1-92**          GRADE: **S**          INSTRUCTOR: Michael MacDonald

COURSE TITLE: *Vocational Computer Technology*

CDC#: D-30420                    NAME:BYRD                    INSTITUTION: **MCSP-IONE**
                        **EDUCATION PROGRESS REPORT**                    CDC 128-E (7/89)

---

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**GRADE
ATTITUDE** S=SATISFACTORY
U=UNSATISFACTORY

**TOTAL CERTIFICATION UNITS IN COURSE:**

VOCATION (VOC) : 10
ADULT BASIC EDUCATION (ABE):0
ADAPTABILITY= **S**                 GENERAL EDUCATION DEVELOPMENT(GED):0
CONDUCT= **S** ,                    HIGH SCHOOL (H.SCH):0
COOPERATION= **S**           ENGLISH SECOND LANGUAGE (ESL):0
DEPENDABILITY= **S**
INITIATIVE= **S**           **TOTAL CERTIFICATION UNITS THIS QUARTER:**

**SPECIFIC CERTIFICATION UNITS COMPLETED:** V01.01.01, .05, .06
DATE STUDENT ENROLLED: **1-9-91**          DATE STUDENT TERMINATED:
                                                        REASON STUDENT TERMINATED:

**COMMENTS:** Fourth Quarter. Excellent performance, fast and accurate progress. Has
been approved for Apprenticeship Program. Completed Panel 3 on 12-11-91. Very
detailed course work.

DATE OF CHRONO: **12-31-91**          GRADE: **S**          INSTRUCTOR: Michael
                                                                              MacDonald
COURSE TITLE: *Vocational Computer Technology*

CDC#: D-30420                    NAME: BYRD, L.A.          INSTITUTION: **MCSP-IONE**
                        **EDUCATION PROGRESS REPORT**                    CDC 128-E (7/89)

Exhibit #11 Page 14

EXHIBIT #12

MATRIX OF BASE TERMS FOR SECOND DEGREE MURDER

CIRCUMSTANCES

| FIRST DEGREE MURDER<br>Penal Code § 189 five years and does not include post conviction credit as provided in § 2290 | A. Indirect<br>Victim died of causes related to the act of the prisoner but was not directly unmasked by prisoner with deadly force e.g. shock producing heart attack; a crime partner actually did the killing. | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim e.g., victim initiated struggle or had goaded the prisoner. This does not include victims acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon and resulting in immediate death or actions calculated to induce terror in the victim. | D. Torture<br>Victim was subjected to the prolonged infliction of physical pain through the use of minimally force prior to act resulting in death. |
|---|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred. e.g. crime partner, drug dealer, etc. | 25-26-27 | 26-27-28 | 27-28-29 | 28-29-30 |
| II. Prior Relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc.) which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense, see Category IV. | 26-27-28 | 27-28-29 | 28-29-30 | 29-30-31 |
| III. No Prior Relationship<br>Victim had little or no personal relationship with prisoner; or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 27-28-29 | 28-29-30 | 29-30-31 | 30-31-32 |
| IV. Threat to Public Order or Murder for Hire<br>The act resulting in the victim's death constituted a threat to the public order include the murder of a police officer, prison guard, public official, labor, period or prison any killing within an institution, or any killing where the prisoner hired and/or paid another person to commit the offense. | 28-29-30 | 29-30-31 | 30-31-32 | 31-32-33 |

SUGGESTED BASE TERM

(c) Matrix of Base Terms for Second Degree Murder on or after November 8, 1978.

CIRCUMSTANCES

| SECOND DEGREE MURDER<br>Penal Code § 189 five years and does not include post conviction credit as provided in § 2290 | A. Indirect<br>Victim died of causes related to the act of the prisoner but was not directly unmasked by prisoner with deadly force e.g., shock producing heart attack; a crime partner actually did the killing. | B. Direct or Victim Contribution<br>Death was almost immediate or resulted at least partially from contributing factors from the victim, e.g., victim initiated struggle or had goaded the prisoner. This does not include victims acting in defense of self or property. | C. Severe Trauma<br>Death resulted from severe trauma inflicted with deadly intensity; e.g., beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon and resulting in immediate death or actions calculated to induce terror in the victim. |
|---|---|---|---|
| I. Participating Victim<br>Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred. e.g. crime partner, drug dealer, etc. | 15-16-17 | 16-17-18 | 17-18-19 |
| II. Prior Relationship<br>Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc.) which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense, see Category IV. | 16-17-18 | 17-18-19 | 18-19-20 |
| III. No Prior Relationship<br>Victim had little or no personal relationship with prisoner; or motivation for act resulting in death was related to the accomplishment of another crime, e.g. death of victim during robbery, rape, or other felony. | 17-18-19 | 18-19-20 | 19-20-21 |

SUGGESTED BASE TERM

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 3040 and 3041, Penal Code.

HISTORY

1. Editorial correction filed 10-8-81; effective thirtieth day thereafter (Register 81, No. 41).
2. Amendment of subsection (a) filed 1-20-88; operative 2-19-88 (Register 88, No. 5).
3. Change without regulatory effect amending subsection (a) to clarify the applicability of the matrices in subsections (b) and (c) when setting the base term for prisoners sentenced to prison for attempted murder, filed 2-16-2001 pursuant to section 100, title 1, California Code of Regulations (Register 2001, No. 7).

§ 2404.  Circumstances in Aggravation of the Base Term.

(a) General. The panel may impose the upper base term or another term longer than the middle base term upon a finding of aggravating circumstances. Circumstances in aggravation of the base term include:

(1) The crime involved some factors described in the appropriate matrix in a category higher on either axis than the categories chosen as most closely related to the crime;

(2) The victim was particularly vulnerable;

(3) The prisoner had a special relationship of confidence and trust with the victim, such as that of employee-employer;

(4) The murder was committed to preclude testimony of potential or actual witnesses during a trial or criminal investigation;

(5) The victim was intentionally killed because of his race, color, religion, nationality or country or origin;

(6) During the commission of the crime the prisoner had a clear opportunity to cease but instead continued;

(7) The manner in which the crime was committed created a potential for serious injury to persons other than the victim of the crime;

Register 2003, No. 25;  6-20-2003

Exhibit #12 Page 1

**EXHIBIT 13**

**MULTIPLE SCLEROSIS VERIFICATION**

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS
DISABILITY PLACEMENT PROGRAM VERIFICATION (DPPV)
CDC 1845 (Rev. 01/04)
CHECK ALL APPLICABLE BOXES

**THIS FORM ONLY VERIFIES OR DISCONFIRMS CLAIMED PHYSICAL DISABILITIES LISTED IN SECTION B**

| INMATE NAME: Byrd, leste | CDC NUMBER: D30420 | INSTITUTION: RJD | HOUSING ASSIGNMENT: FL-5-138L | DATE FORM INITIATED: 6/21/06 |
|---|---|---|---|---|

*Sections A - B to be completed by licensed medical staff.*

| SECTION A: REASON FOR INITIATION OF FORM | SECTION B: DISABILITY BEING EVALUATED |
|---|---|
| ☐ Inmate self-identifies to staff    ☐ Third party evaluation request | ☐ Blind/Vision Impaired    ☐ Speech Impaired |
| ☒ Observation by staff    ☒ Medical documentation or Central File information | ☐ Deaf/Hearing Impaired    ☒ Mobility Impaired |

*Sections C - G to be completed by a physician only.*

| SECTION C: PERMANENT DISABILITIES IMPACTING PLACEMENT | SECTION D: PERMANENT DISABILITIES *NOT IMPACTING PLACEMENT* |
|---|---|
| 1. ☐ FULL TIME WHEELCHAIR USER - DPW  Requires wheelchair accessible housing and path of travel. | 1. NO CORRESPONDING CATEGORY |
| 2. ☒ INTERMITTENT WHEELCHAIR USER - DPO  Requires lower bunk, wheelchair accessible path of travel and *does not require wheelchair accessible cell.* | 2. NO CORRESPONDING CATEGORY |
| 3. ☐ MOBILITY IMPAIRMENT - With or Without Assistive Device (Wheelchairs shall not be prescribed) - DPM  Orthopedic, neurological or other condition that substantially limits ambulation (cannot walk 100 yards on a level surface without pause). Requires lower bunk, no triple bunk, and no stairs in path of travel. | 3. ☐ MOBILITY IMPAIRMENT (Lower Extremities) - DNM  Walks 100 yards without pause with or without assistive devices.  ☐ No Housing Restrictions    ☐ See HOUSING RESTRICTIONS in Section E  ☐ Requires relatively level terrain and no obstructions in path of travel. **Do not place at:** CCI, CMC-E, CRC, CTF-C, FSP, SCC I or II, SOL, or SQ. (CDC 128-C: _____) |
| 4. ☐ DEAF/HEARING IMPAIRMENT - DPH  Must rely on written communication, lip reading or signing as residual hearing, with assistive devices, will not enable them to hear, understand or localize emergency warnings or public address announcements. | 4. ☐ HEARING IMPAIRMENT - DNH  With residual hearing at a functional level with hearing aid(s). |
| 5. ☐ BLIND/VISION IMPAIRMENT - DPV  Not correctable to central vision acuity of better than 20/200 with corrective lenses in at least one eye (See HOUSING RESTRICTIONS IN SECTION E). | 5. NO CORRESPONDING CATEGORY |
| 6. ☐ SPEECH IMPAIRMENT - DPS  Does not communicate effectively speaking or in writing. | 6. ☐ SPEECH IMPAIRMENT - DNS  Does not communicate effectively speaking, but does when writing. |

**SECTION E: ADDITIONAL MEDICAL INFORMATION**

CSR ALERT:
☒ Requires relatively level terrain and no obstructions in path of travel
☒ Complex medical needs affecting placement    ☐ CDC 128-C _____

HEALTH CARE APPLIANCE / IDENTIFICATION VEST:
☐ Cane    ☐ Crutch    ☐ Walker    ☐ Leg/Arm prosthesis    ☐ Vest
☒ Other: _wheelchair_    ☐ CDC 128-C(s) dated: 6/21/06

ASSISTANCE NEEDED WITH ACTIVITIES OF DAILY LIVING:
☐ Feeding or Eating    ☐ Bathing    ☐ Grooming    ☐ W/C transferring
☐ Toileting    ☐ Other: _____    ☐ CDC 128-C(s) dated: _____

OTHER DPP DESIGNATIONS:
☐ NONE

| CODE | DATED | CODE | DATED |
|---|---|---|---|

HOUSING RESTRICTIONS:    ☒ Lower bunk    ☒ No stairs    ☒ No triple bunk. CDC 128-C(s) dated: 6/21/06

**SECTION F: EXCLUSIONS**

☐ VERIFICATION OF CLAIMED DISABILITY NOT CONFIRMED: My physical examination or other objective data DOES NOT SUPPORT *claimed* disability. (Explain in Comments Section and CDC 128-C dated _____).

☐ REMOVAL FROM A DPP CODE: Removal from previous DPP code: _____. (Explain in Comments Section and CDC 128-C dated: _____.)

☐ REMOVAL FROM ENTIRE PROGRAM: Removal from DPP code(s): _____. (Explain in Comments Section and CDC 128-C dated: _____.)

**SECTION G: EFFECTIVE COMMUNICATION FACTORS**

☐ Uses Sign Language Interpreter (SLI)    ☐ Reads Braille    ☐ Communicates with written notes    ☐ Requires large print or magnifier
☐ Reads lips    ☐ NO "EFFECTIVE COMMUNICATION" ISSUES OBSERVED OR DOCUMENTED IN THE UNIT HEALTH RECORD

**PHYSICIAN'S COMMENTS:** *(Focus on affected systems and functional limitations. No specific diagnosis or other confidential medical information.)*
patient Has chronic lower Extremity weakness, multiple sclerosis

| PHYSICIAN'S NAME (Print) J. Russell MD | PHYSICIAN'S SIGNATURE | DATE SIGNED 6/21/06 |
|---|---|---|
| HEALTH CARE MANAGER'S / DESIGNEE'S NAME (Print) Ivy Chen | HEALTH CARE MANAGER'S / DESIGNEE'S SIGNATURE | DATE SIGNED 6/21/06 |

NOTE: After review by the Health Care Manager or Chief Physician & Surgeon, health care staff shall retain green copy for the UHR, send the inmate copy via institutional mail, and route the original and remaining copies to the C&PR/RC CC-III for tracking and further distribution according to the instructions below.

DISTRIBUTION: Original - Top General Chrono Section of C-File;    Green - Chrono Section, Unit Health Record    Canary - C&PR/RC-III;    Pink-CC-I;    Gold-Inmate

Exhibit #13 Page 1

NAME and NUMBER BYRD, LESLIE    D-30420    F1-02-225U

CDC-128

This inmate requires LOWER BUNK/LOWER TIER  OTHER

This chrono is to be:

[ ] TEMPORARY    [XX] PERMANENT

DUE TO SYMPTOMS OF MULTIPLE SCLEROSIS.
If temporary, this chrono expires at midnight on.

DATE

Orig: C-File
  cc: Medical Record
      Inmate
      Housing Officer

JAMES R. HUTZLEY, M.D.
Staff Physician/Surgeon

DATE    MARCH 6, 1996    RJDCF/SD    (rs)

MEDICAL—PSYCHIATRIC—DENTAL

---

NAME and NUMBER    BYRD, LESLIE    D-30420    F1-02-225U

CDC-128-C

The above named inmate should be status restricted light duty, no prolonged
standing, walking due to gradually increasing symptoms of multiple sclerosis.
A disease of the nervous system resulting in increasing weakness, lack of
coordination, numbness, visual disturbance, etc.

This chrono to remain in force throughout inmate's stay at Richard J. Donovan
Correctional Facility.

Orig: C-File
  cc: Medical Record
      Housing Officer
      Inmate Assignment
      Inmate

JAMES R. HUTZLEY, M.D.
Staff Physician and Surgeon

DATE    MARCH 5, 1996    RJDCF/SD    (rs)

MEDICAL—PSYCHIATRIC—DENTAL

Exhibit #13 Page 2

**EXHIBIT #14**

**BOARD OF PRISON TERMS STATISTICS**

VOLUME 2   NUMBER 5   **CALIFORNIA LIFER NEWSLETTER #11**   SEPTEMBER 2006   PAGE 3

**BPH News** (from page 2)

## STATISTICS

# 2006 Governor Statistics – As of August 9, 2006

| Offense | Reversed | Declined Review | En Banc (*) Referral | Total |
|---|---|---|---|---|
| First Degree Murder | 18 (95%) | 1 | | 19 |
| Second Degree Murder | 60 (83%) | 12 | | 72 |
| Attempted Murder (*) | | 0 | 6  (100%) | 6 |
| Aggravated Kidnapping (*) | | 0 | 14 (100%) | 14 |

(*) the governor does not have reversal power in these cases

# 2005 BPT/Governor Parole Statistics

**Parole Consideration Hearings Conducted**          4953

    Male First-Degree Murder Cases          1320
    Female First-Degree Murder Cases          88
        Total First Degree Murder Cases          1408
        All Other Cases          3545

**Overall Suitability Rate**

    All BPH Hearings          3.6% (179/4953)
    After Governor Reversals          1.2% ( 58/4953)

**Suitability Rate by Offense**

    **All First-Degree Murder Cases**

        BPH Hearings          2.30% (32/1408)
        After Governor Reversals          0.36% ( 5/1408)

    Male First-Degree Murder Cases

        BPH Hearings          1.97% (26/1320)
        After Governor Reversals          0.08% ( 1/1320)

    Female First-Degree Murder Cases

        BPH Hearings          6.8% (6/88)
        After Governor Reversals          4.5% (4/88)

Source: Letter from Governor's Legal Affairs Secretary, June 6, 2006

The number of hearings for female prisoners was obtained from subtracting the number of male cases from the total number of cases

(Continued on page 8)

Exhibit #14 Page 1

**BPH** (from page 4)

Following are tables and excerpts of the Board's parole statistics taken from our files and provided by Carl McQuillion and Michael Brodheim (many thanks!).

## Lifer Statistics:1998-2005

| | A | B | C | D1/D2 | E | F1/F2 | G |
|---|---|---|---|---|---|---|---|
| | | | # Grants | | Net # | Net % | |
| Year | # Hrgs | Denials | Prop./Eff. | #/% Rev'd | Suitable | Suitable | # Rescinded |
| 1998 | 2,191 | 2,047 | 27/23 | 3/13% | 20 | 0.91%/0.96% | 1 |
| 1999 | 1,953 | 1,827 | 21/13 | 10/77% | 3 | 0.15%/0.16% | 1 |
| 2000 | 2,179 | 1,873 | 52/37 | 12/32% | 25 | 1.15%/1.30% | 0 |
| 2001 | 3,645 | 3,098 | 84/69 | 33/48% | 36 | 0.99%/1.13% | 1 |
| 2002 | 4,826 | 3,746 | 168/140 | 102/73% | 38 | 0.79%/0.97% | 3 |
| 2003 | 4,499 | 2,957 | 168/158 | 134/85% | 24 | 0.53%/0.77% | 3 |
| 2004 | 4,552 | 2,620 | 214/204 | 128/63% | 76 | 1.67%/2.68% | 3 |
| 2005 | 4,953 | 3,177 | 161/166* | 121/73% | 45 | 0.91%/1.35% | 3 |
| | 28,798 | 21,345 | 895/810 | 543/67% | 267 | 0.93%/1.20% | 15 |

¹Other than reversals, all the statistics here were obtained in discovery from AG James E. Flynn in Brodheim v. DiNinni, et al., a 42 U.S.C. § 1983 action pending in the U.S. District Court for the Eastern District of California, case no. 2:05-CV-1512 LKK GGH P. Flynn's statistics were "Life Prisoner Hearing and Decision Information" data sheets for calendar years 1998 through 2005 and were compiled by the Board's Management Information Section, Administrative Services Division.

²C1 lists the number of proposed grants. C2 lists the number of effective grants.

³The # of reversals (D1) was obtained from the Governor's Executive Reports. The % reversed (D2) was calculated as (# reversed x 100) / (# eff. grants), i.e., (D1 x 100)/ C2.

⁴The net # suitable (E) was calculated as (# eff. grants - # reversed), i.e., (C2 - D1).

⁵The net % suitable was calculated in two different ways. The first number (F1) was calculated as (net # suitable x 100) / (# hearings), i.e., (E x 100) / A. The second number (F2) was calculated as (net # suitable x 100) / (# denials + # proposed grants), i.e., (E x 100) / (B + C1). The calculations differ somewhat because the # hearings (apparently) includes stipulations and postponements, as well as other miscellaneous-type hearings which do not lead directly to either grants or denials of parole.

⁶It is not clear why (or how) the number of effective grants could exceed the number of proposed grants in 2005.

Exhibit #14 Page 2

VOLUME 2    NUMBER 6    CALIFORNIA LIFER NEWSLETTER    #12    NOVEMBER 2006    PAGE 11

# LIFER SENTENCES 1940-2005
## FOOTNOTES ON PAGE 12

| Year | # Hearing | #Suitable | # Rev'd | #Rescinded | %Suitable | Net % Suitable | %Rescinded |
|------|-----------|-----------|---------|------------|-----------|----------------|------------|
| 1940/41 | 4266[a] | 2093[a] | | 55[b] | 49.05% | | 1.29% |
| 1978/79[c] | | | | | 45% | | |
| 1979/80[d] | 515 | 96 | | | 18.64% | | |
| 1980/81[d] | 605 | 78 | | | 13.87% | | |
| 1981/82[d] | 715 | 50 | | | 6.99% | | |
| 1982/83[d] | 818 | 36 | | | 4.40% | | |
| 1983/84[d] | 836 | 53 | | | 6.34% | | |
| 1984/85[d] | 660 | 49 | | | 7.42% | | |
| 1985/86[d] | 841 | 62 | | | 7.37% | | |
| 1986/87[d] | 740 | 48 | | | 6.49% | | |
| 1987/88[d] | 803 | 31 | | | 3.87% | | |
| 1988/89[d] | 875 | 22 | | | 2.51% | | |
| 1989/90[d] | 1266 | 45 | | | 3.55% | | |
| 1990/91[d] | 1241 | 63 | | | 5.08% | | |
| 1991 | 1813[e] | 50[e] | 6[f] | 7[e] | 2.76% | 2.45% | 0.39% |
| 1992 | 1823[e] | 17[e] | 2[f] | 19[e] | 0.93% | 0.82% | 1.04% |
| 1993 | 1676[e] | 14[e] | 5[f] | 23[e] | 0.84% | 0.66% | 1.37% |
| 1994 | 2019[e] | 9[e] | 1[f] | 23[e] | 0.45% | 0.40% | 1.14% |
| 1995 | 2180[e] | 6[e] | 2[f] | 20[e] | 0.28% | 0.18% | 0.92% |
| 1996 | 2304[e] | 9[e] | 2[f] | 8[e] | 0.39% | 0.30% | 0.35% |
| 1997 | 2286[e] | 13[e] | 1[f] | 2[e] | 0.57% | 0.52% | 0.09% |
| 1998 | 2177[e] | 22[e] | 3[f] | 2[e] | 1.01% | 0.87% | 0.09% |
| 1999 | 1953[g] | 16[h] | 16[h] | | 0.82% | 0.31% | |
| 2000 | 2168[i] | 27[i] | 12[i] | | 1.25% | 0.69% | |
| 2001 | 3656[k] | 53[l] | 23[l] | | 1.46% | 0.55% | |
| 2002 | 4826[m] | 133[n] | 102[n] | | 2.76% | 0.64% | |
| 2003 | 4498[o] | 159[o] | 134[p] | | 3.53% | 0.56% | |
| 2004 | 3813 | 225[p] | 128[q] | | 5.90% | 1.45% | |
| 2005 | 4953[r] | 179[s] | 121[s] | | 3.61% | 1.17% | |

**SUMMARY**

| Year | # Hearing | #Suitable | # Rev'd | #Rescinded | %Suitable | Net % Suitable | %Rescinded |
|------|-----------|-----------|---------|------------|-----------|----------------|------------|
| pre-1979[t] | | | | | 50% | 50% | |
| 1979/80-1982/83 | 2,684 | 260 | 0 | 0 | 9.60% | 9.60% | |
| 1983/84-1990/91 | 7,260 | 373 | 0 | 0 | 5.14% | 5.16% | |
| 1991-1998 | 16,278 | 140 | 20 | 104 | 0.86% | 0.74% | 0.64% |
| 1999-2005 | 24,845 | 792 | 540 | | 3.19% | 1.01% | |
| 1941-2005 | 41,123 | 932 | 560 | | 2.27% | 0.90% | |

(Footnotes on page 12)

Exhibit #14 Page 3

# FOOTNOTES: LIFER SENTENCES 1940-2005

a. Board of Prison Terms and Paroles, 10th Annual Report to the Governor, p. 15.

b. Id., p. 17.

c. Estimate based on graph on p. 3 of 1988 BPT Life Prisoner Report.

d. Statistics on Parole Suitability of Life Prisoners, BPT/MIS Report, Apr. 9, 1992.

e. BPT Life Prisoner Hearing and Decision Information, Oct. 1, 1999 Report.

f. Governor's Executive Reports on Parole Review Decisions, 1991-98.

g. Communication from BPT Public Information Representative, Bill Sessa, July 16, 2003.

h. Governor's Executive Report on Parole Review Decisions, 1999.

i. Life Prisoner Hearing and Decision Information for CY 2000, MIS Report.

j. Governor's Executive Report on Parole Review Decisions, 2000.

k. Life Prisoner Hearing and Decision Information for CY 2001, MIS Report.

l. Governor's Executive Report on Parole Review Decisions, 2001.

m. Communication from BPT Public Information Representative, Bill Sessa, May 9, 2003.

n. Governor's Executive Report on Parole Review Decisions, 2002.

o. Communication from BPT Public Information Office, March 15, 2004, as modified by subsequent communication dated July 30, 2004.

p. Governor's Executive Report on Parole Review Decisions, Nov. 17, 2003 (when Schwarzenegger assumed office) through Dec. 31, 2004.

q. Does not include 18 en banc referrals (in non-murder cases).

r. June 6, 2006 letter from Daniel P. Maguire, Deputy Legal Affairs Secretary.

s. Governor's Executive Report on Parole Review Decisions (CY 2005).

t. Estimate.


* "net % suitable" = 100 x (# suitable - # reversed)/(# hearings)

<u>Additional Notes</u>

1. The 1999 totals do <u>not</u> include 3 YA cases found suitable by the Board but reversed by Governor Davis that year.

2. It is unclear whether the Board held any rescission hearings after 1998. It appears, however, that (since that time) en banc reviews have resulted in "reversal" by the Board of many of its own previous suitability findings, so that the actual (or net) number of suitability findings may be less than the figures in the table indicate (even after taking into account reversals by the Governor).

3. The 2001 figures reflect the fact that California courts declared invalid two "reversals" by Governor Davis on the ground that the Governor does not have the authority under California law to "reverse" BPT decisions in the case of those convicted of <u>conspiracy</u> to commit murder.

4. The 1979/80-1982/83 summary figures coincide roughly with the results attributable to the last term of Governor Jerry Brown's administration. The 1983/84-1990/91 summary figures coincide roughly with the results attributable to the two terms of the George Deukmejian administration. The 1991-1998 summary figures coincide roughly with the results attributable to the two terms of the Governor Pete Wilson administration.

Exhibit #14 Page 4

### TABLE OF TIME SERVED
#### FIRST DEGREE MURDER OFFENDERS
#### YEARS 1986-2005
#### MEANS & MEDIANS

## 1st Degree Murder

| YEAR | MEAN | MEDIAN | NUMBER PAROLED | |
|------|------|--------|----------------|---|
| 1986 | 168.9 | 169.4 | 33 | |
| 1987 | 167.7 | 157.7 | 75 | |
| 1988 | 158.6 | 159 | 42 | |
| 1989 | 166.3 | 166 | 51 | |
| 1990 | 174.6 | 171.6 | 33 | |
| 1991 | 168.9 | 169.4 | 33 | |
| 1992 | 205.5 | 200.3 | 8 | |
| 1993 | 193.7 | 193.7 | 2 | |
| 1994 | 0 | 0 | | 0 |
| 1995 | 0 | 0 | | 0 |
| 1996 | 0 | 0 | | 0 |
| 1997 | 0 | 0 | | 0 |
| 1998 | ISL 361.3 | ISL 361.3 | 1 | |
|      | DSL 241.7 | DSL 241.7 | 1 | |
| 1999 | ISL 286.2 | ISL 286.2 | 2 | |
| 2000 | 0 | 0 | | 0 |
| 2001 | DSL 251.4 | DSL 251.4 | 1 | |
| 2002 | DSL 240.0 | DSL 239.1 | 3 | |
| 2003 | DSL 253.2 | 243.2 | 2 | |
| 2004 | (pre-78 DSL) 342.5 (28.5 yrs) | (pre-78 DSL) 336.6 (28 yrs) | 7 | |
|      | DSL 284.7 | DSL 286.4 | 8 | |
| 2005 | (pre-78 DSL) 372.0 (31 yrs) | (pre-78 DSL) 372.0 (31 yrs) | 2 | |
|      | DSL 290.4 (24.2 yrs) | DSL 306.3 (25.5 yrs) | 3 | |

Source:    California Department of Corrections, Offender Information Services Branch Statistics and Analysis (Complete data supporting this chart is at EXHIBIT GG.)

### LIFE PRISONER RELEASES
#### 1979-1987

| Year | Total Heard | Total Granted | Percentage |
|------|-------------|---------------|------------|
| 1979 | N/A | N/A | 32% |
| FY 1979/1980 | 515 | 96 | 19% |
| FY 1980/1981 | 606 | 78 | 13% |
| FY 1981/1982 | 715 | 50 | 7% |
| FY 1982/1983 | 819 | 36 | 4% |
| FY 1983/1984 | 836 | 53 | 6% |
| FY 1984/1985 | 661 | 49 | 7% |
| FY 1985/1986 | 835 | 61 | 7% |
| FY 1986/1987 | 740 | 48 | 5% |

Source:    Board of Prison Terms    (1988)
           Beulah Hayward
           Management Information Section

    &

           Board of Prison Terms    (1983)
           Joan W. Cavanagh
           Executive Officer

Exhibit #14 Page 5

VOLUME 2   NUMBER 6   CALIFORNIA LIFER NEWSLETTER   #12   NOVEMBER 2006   PAGE 14

# 2006 PAROLES
## AS OF AUGUST 9, 2006

| PAROLE STATISTICS (Updated ) 08/09/06 111 Total | Decline to Review | Reverse | En Banc | Affirm |
|---|---|---|---|---|
| | 13 Total 13 - 3041.2 0- 3041.1 | 78 Total 78 - 3041.2 | 20 Total 20 - 3041.1 | 0 Total 0 — 3041.2 |

| BREAKDOWN BY CRIME AND GUBERNATORIAL ACTION (Updated 08/09/06) | 1st Degree Murder | 2nd Degree Murder | Attempted Murder | Kidnap | Other | Total |
|---|---|---|---|---|---|---|
| Decline to Review | 12 | 1 | | | | 13 |
| Affirm | | | | | | |
| Reverse | 68 | 18 | | | | 78 |
| En Banc | | | 6 | 14 | | 20 |
| Modify | | | | | | |
| Total | 72 | 19 | 6 | 14 | | 111 |

# LATE-BREAKING NEWS

## GOVERNOR'S STAFF AGAIN REVERSED
### Court of Appeal Orders
### Jeffrey Elkins' Release

*In re Elkins*
__Cal.Rptr.3d__, __Cal.App.4th__,
2006 WL 3072139

On October 31, the Court of Appeal, First Appellate District, voided still another of Conan's staff's parole reversals, and ordered the petitioner's release on parole forthwith. Elkins, sentenced to 25-to-life for first degree felony murder and robbery in 1980, became eligible to parole on his 1994 MEPD, but had been denied parole ten times before the eleventh panel found him suitable in 2005. Predictably, Conan's staff reversed the decision, based on the gravity of the offense and the notion that Elkins had insufficient insight because he allegedly accepted responsibility only "recently."

The Court affirmed Elkins' liberty interest in his parole date, and found no evidence to support either of "the Governor's" grounds for reversal. Regarding the offense, committed by a 19-year old drug addict 26 years earlier, described by the Governator's clerks using verbiage they use in all cases: "atrocious," "cold-blooded," "brutal," and "calculated," the court found that the facts cited for reversal pertained more to the robbery and the events occurring after the murder than to the murder itself, which was not planned or calculated, but an after-

thought committed during a robbery, the determinate term for which Elkins had long completed. The court found no evidence to support the Governor's staff's characterization of the murder, and no evidence that the 26-year old offense, given Elkins' exemplary prison record of conduct and reform, and his forensically determined low parole risk, suggests that his parole currently poses and undue risk to public safety.

The court also found the notion that Elkins' acceptance of responsibility was "recent" to be contrary to the record and, in any event, and, as the Lee court held (supra), that the recentness of such acceptance is irrelevant as long as it is complete and genuine, as the record indicated in the case.

Finally, the court indicated that aggravating and mitigating offense facts are appropriately considered in setting the term, and noted that Elkins had served 11 years more than his eligible parole date. The court held:

"Thus, a governor, in reviewing a suitability determination, must remain focused not on circumstances that may be aggravating in the abstract, but, rather, on facts indicating that release poses "am unreasonable risk of danger to society [cites]."

"Given the lapse of 26 years and the exemplary rehabilitative gains made by Elkins over that time, continued reliance on these aggravating facts of the crime no longer amount to 'some evidence' supporting denial of parole . . . The commitment offense . . . is an unsuitability factor that is immutable and whose predictive value 'may be very questionable after a long period of time' . . .Reliance on an immutable factor, with regard to or consideration of subsequent circumstances, may be unfair, run contrary to the rehabilitative goals."

Exhibit #14 Page 6

**EXHIBIT #15**

**MARIN COUNTY SUPERIOR COURT DENIAL**

FILED

MAR 19 2007

KIM TURNER
Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By M. Murphy, Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF MARIN

LESLIE ARTHUR BYRD,                    )
                                       )    Case No.  SC 152472A
        Petitioner,                    )
                                       )
    v.                                 )
                                       )    ORDER DENYING PETITION FOR
ROBERT J. HERNANDEZ, WARDEN, et al.    )    WRIT OF *HABEAS CORPUS*
                                       )
        Respondent.                    )
_____)

     Petitioner Leslie Arthur Byrd is an inmate currently housed in the Richard J. Donovan

Correctional Facility, San Diego, California.  In 1986 he was convicted in the Marin Superior

Court of murder (second degree) and sentenced to fifteen years to life.  His requests for parole

have been repeatedly denied.

     Having reviewed the matter the Court finds that there is no good cause for the granting of

the petition.  Petitioner's Petition for Writ of *Habeas Corpus* is therefore denied.

Dated:  March 19, 2007

                                              
JUDGE OF THE SUPERIOR COURT

**EXHIBIT #16**

**CALIFORNIA COURT OF APPEAL DENIAL**